**Reversed and Remanded and Opinion filed October 25, 2016.**



In The

# 𝕱𝖔𝖚𝖗𝖙𝖊𝖊𝖓𝖙𝖍 𝕮𝖔𝖚𝖗𝖙 𝖔𝖋 𝕬𝖕𝖕𝖊𝖆𝖑𝖘

---

## NO. 14-15-00693-CV

---

## DAVID BRUCE, AN INDIVIDUAL, ALLIANCE RECRUITING RESOURCES, INC., AND KINGWOOD PLACE GP, LLC, Appellants

## V.

## MISTY CAUTHEN, AN INDIVIDUAL AND DIRECT HIRE.COM LLC, Appellees

---

**On Appeal from the 127th District Court
Harris County, Texas
Trial Court Cause No. 2013-11131**

---

## O P I N I O N

This appeal involves business disputes that arose between two individuals who were both shareholders in a staffing company and partners in a limited partnership created to hold a multi-acre tract of land for future development. After summary proceedings and a jury trial, the trial court signed a judgment awarding the plaintiff in excess of $2 million in actual damages, exemplary damages, and

attorney's fees. In eight issues, the appellant challenges the trial court's pre-trial liability findings, evidentiary and legal rulings during trial, and the awards of exemplary damages and attorney's fees to the appellee. For the reasons explained below, we reverse and remand.

## Factual and Procedural Background

In 2002, David Bruce founded Alliance Recruiting Resources, Inc. ("Alliance"), a medical staffing company. That same year, Bruce hired Misty Cauthen as a recruiter. In 2006, Cauthen was promoted to Vice-President and awarded 20% of the shares of stock in Alliance. Cauthen's ownership of the stock was governed by a Buy-Sell Agreement between Alliance and its shareholders, Bruce and Cauthen. Over time, Cauthen was awarded additional shares of stock and eventually became President of Alliance. By 2010, Cauthen had been given an additional 20% of the stock, increasing her ownership to 40% of the company.

In 2007, Bruce and Cauthen also formed Kingwood Place Investments #1, LP ("the Partnership"). The limited partners in the Partnership were Bruce and Cauthen, and the general partner was Kingwood Place GP, LLC, a company solely owned by Bruce. Bruce and Cauthen's ownership interests in the Partnership mirrored their ownership interests in Alliance, except that Kingwood Place GP, LLC, owned 1% of the Partnership. Consequently, in 2012, Bruce owned 60.4% and Cauthen owned 39.6% of the Partnership.

The initial purpose of the Partnership was to hold title to an approximately 4.57-acre tract of undeveloped land it had purchased next to the Kingwood Medical Center in Montgomery County, where Bruce and Cauthen intended to construct a new office building for Alliance. Based on an "oral lease" agreement, Alliance leased the land from the Partnership, and Alliance's lease payments were used to pay the Partnership's mortgage loan. The Partnership had no assets other

2

than the land and no liabilities other than the mortgage.

By the fall of 2012, business disagreements arose between Bruce and Cauthen, and ultimately Cauthen resigned from Alliance in February 2013. Based on the terms of the Buy-Sell Agreement, Cauthen was entitled to $158,000.00 for her shares in Alliance, payable by an initial down payment of 20% in cash and a note to be paid in quarterly installments over five years. As part of her separation from the company, Cauthen was also permitted to keep the company car she had been using. Cauthen launched her own staffing company, DirectHire.com LLC., that same year.

Although Cauthen had resigned from Alliance, she was still a limited partner in the Partnership. In 2013, the Partnership's land was valued by one estimate at $1,695,000.00. Cauthen asked Bruce to dissolve the Partnership and sell the land, but he refused. Bruce also refused Cauthen's offer to sell her interest in the Partnership to Bruce for $478,000.00. Cauthen then tried to find a third party to purchase her Partnership interest, but was unsuccessful.

In the meantime, Alliance continued to make lease payments to the Partnership, and Bruce began invoicing Cauthen for her share of the Partnership's monthly mortgage payments and other operating expenses. Cauthen made no payments, however, and the Partnership eventually declared her to be in default.[1] In February 2014, Bruce notified Cauthen that her interest in the Partnership would be sold at a foreclosure sale. Neither Cauthen nor her ex-husband, who was also notified of the foreclosure sale, participated in the sale.

---

[1] Bruce initially took the position that the invoices represented cash calls by the Partnership. The invoices did not state that they were cash calls, however, and Bruce did not receive similar invoices. Bruce acknowledged at trial that the invoices were not cash calls under the terms of the limited partnership agreement, and that accordingly Cauthen was never in default for failure to pay a cash call.

On March 6, 2014, a private foreclosure sale was held at which Bruce was the only bidder. Bruce acquired Cauthen's interest in the Partnership for the amount of her alleged indebtedness, then totaling $51,234.02. About a week later, Cauthen and her ex-husband were sent a "Notification of Transfer of Limited Partnership Interest" informing them of the details of the sale and the general partner's transfer of Cauthen's interest in the Partnership to Bruce.

Shortly after Cauthen resigned from Alliance, she and DirectHire.com sued Bruce and Alliance for declaratory judgment. Cauthen sought declarations that she owed no contractual or other duties to Bruce and Alliance, she and DirectHire.com were free to compete in the staffing industry, and no trade secrets had been appropriated from Alliance.

Bruce and Alliance filed answers, and Alliance asserted counterclaims for breach of contract and tortious interference with existing contracts and prospective contractual relations. Alliance also sought temporary and permanent injunctive relief to prevent Cauthen and DirectHire.com from competing with Alliance, using confidential information obtained from Alliance, or taking other actions that Alliance considered harmful to its interests. On January 8, 2014, the trial court granted Alliance a temporary injunction. The trial court later extended the temporary injunction at Alliance's request.

In March 2014, Cauthen and DirectHire.com amended their petition. In addition to seeking declaratory relief, Cauthen asserted claims for wrongful foreclosure on Cauthen's partnership interest in violation of Texas' codification of the Uniform Commercial Code ("UCC"), common-law wrongful foreclosure, conversion, breach of fiduciary duty, partnership oppression, breach of the limited partnership agreement, shareholder oppression, and statutory and common-law fraud. In a second amended petition, Cauthen and DirectHire.com added

4

Kingwood Place GP, the Partnership's general partner, as a defendant. Kingwood Place GP answered. The parties on both sides amended their pleadings as the case proceeded.

Also in March 2014, Cauthen moved for partial summary judgment on her claim for wrongful foreclosure under the UCC. On May 22, 2014, the trial court granted Cauthen's motion.

In July 2014, Cauthen moved to dissolve or modify the temporary injunction. The next month, Bruce and Alliance moved for traditional and no-evidence motions for partial summary judgment on Cauthen's breach of fiduciary duty claims against Alliance and derivatively against Bruce based on Cauthen's status as a minority shareholder. Cauthen responded with her own traditional summary judgment motion on those claims, and she also sought summary judgment on her breach of contract claims. Cauthen also requested a ruling relating to the application of discounts to the valuation of her partnership interest.

On October 15, 2014, the trial court signed an amended temporary injunction order against Cauthen and DirectHire.com, eliminating previously imposed non-compete provisions and setting the order to expire on February 20, 2015. The trial court also granted Alliance's and Bruce's traditional and no-evidence motions against Cauthen on her breach of fiduciary duty claims based on her status as a minority shareholder. On December 1, the trial court denied Cauthen's motion for summary judgment "as to damages" and ruled that the remainder of the motion was "still under consideration by the Court."

Prior to trial, Bruce moved to bifurcate the case because Cauthen sought punitive damages, and the trial court granted his motion. The roughly two-week trial commenced on March 30, 2015.

5

At the start of the trial, the jury was informed that the trial court had already ruled that Bruce had wrongfully foreclosed on Cauthen's partnership interest in violation of the UCC, and the only issue as to that claim would be the amount of damages to be awarded. The other issues Cauthen would ask the jury to determine were whether Bruce failed to comply with the limited partnership agreement and if so, the amount of any resulting damages; whether and to what percentage the value of Cauthen's 39.6% limited partnership interest should be discounted for lack of marketability and lack of control; whether Bruce failed to comply with his duty of loyalty to Cauthen in connection with the transfer of her interest in the Partnership; the value of the benefit, if any, to Bruce in connection with the transfer; and whether there was clear and convincing evidence that the harm to Cauthen as a result of Bruce's failure to comply with his duty of loyalty resulted from malice. Conversely, Bruce would ask the jury to determine whether Cauthen took Alliance's customer or physician data with her when she left Alliance and whether she still had it.

Over the next four days, the jury heard testimony from Bruce, Cauthen, Alliance's chief financial officer, Alliance's chief information officer, and the real estate broker marketing the Partnership's land. The jury also heard each party's expert witnesses testifying as to the value of Cauthen's 39.6% interest in the Partnership. At the close of the evidence in the first phase of the trial, Cauthen moved for a directed verdict on her claim that Bruce breached the limited partnership agreement. The trial court granted the motion.

Because the trial court had determined Bruce's liability as a matter of law on Cauthen's claims for wrongful foreclosure and breach of contract, the court's charge instructed the jury to determine only the amount of damages to be awarded on those claims. All other issues were submitted to the jury.

The jury unanimously answered all questions favorably to Cauthen, awarding her $469,044.73 on her wrongful foreclosure claim, $469,044.73 on her breach of contract claim, and $520,278.75 on her breach-of-loyalty claim. The jury also found that no discounts should be applied to the fair market value of Cauthen's 39.6% limited partnership interest, Cauthen did not take or retain Alliance's customer or physician data, and Bruce acted with malice in connection with the transfer of her limited partnership interest in the Partnership.

Because the jury found that Bruce had acted with malice, the second phase of the trial focused on the amount of exemplary damages. Both parties decided not to present any additional evidence, and instead proceeded directly to closing arguments. The jury returned a verdict assessing exemplary damages of $1,200,00.00 against Bruce.

Cauthen filed a motion for judgment, electing to recover for breach of the duty of loyalty. Cauthen also requested an award of attorney's fees based on her submission of proof to the trial court. Bruce filed a motion for judgment notwithstanding the verdict (JNOV) on all of Cauthen's claims.

On May 15, 2015, the trial court signed a final judgment. After applying the statutory cap to the amount of exemplary damages found by the jury,[2] the trial court ordered, in relevant part, that Cauthen recover from Bruce actual damages of $520,278.75, exemplary damages of $1,040.567.50; and attorney's fees of $454,682.53. Bruce filed a motion for new trial, which was overruled by operation of law. This appeal followed.

### Issues on Appeal

On appeal, Bruce raises eight issues, contending that the trial court erred by

---

[2] *See* Tex. Civ. Prac. & Rem. Code § 41.008(b).

7

(1) granting a partial summary judgment that Bruce wrongfully foreclosed on Cauthen's interest in the Partnership; (2) excluding Bruce's testimony concerning his belief that he was complying with the law and his intent to appeal the trial court's judgment; (3) denying a JNOV on Cauthen's wrongful foreclosure claims; (4) granting a directed verdict for Cauthen on her breach of contract claims; (5) denying a JNOV on Cauthen's claims for damages for breach of contract; (6) denying a JNOV on Cauthen's claims for breach of the duty of loyalty; (7) granting judgment in Cauthen's favor on her claim for exemplary damages; and (8) granting Cauthen attorney's fees. We address these issues in turn.

## I.    Cauthen's Partial Summary Judgment on Wrongful Foreclosure

In his first issue, Bruce contends that the trial court erred by granting Cauthen a partial summary judgment on her claim that Bruce wrongfully foreclosed on Cauthen's 39.6% interest in the Partnership in violation of section 9.625 of the UCC. *See* Tex. Bus. & Com. Code § 9.625(b) (providing that a debtor may recover damages for losses caused by a secured party's failure to comply with chapter 9). According to Bruce, this ruling is the predominating issue because it is the foundation for the rest of the case.

To succeed on a motion for summary judgment on her wrongful foreclosure claim, Cauthen was required to show that there was no genuine issue of material fact and that she was entitled to summary judgment as a matter of law. *See* Tex. R. Civ. P. 166a(c). We review a summary judgment for evidence that would enable reasonable and fair-minded jurors to differ in their conclusions. *Wal-Mart Stores, Inc. v. Spates*, 186 S.W.3d 566, 568 (Tex. 2006) (per curiam).

Section 9.610 of the UCC, titled "Disposition of Collateral After Default," provides that after a default, a secured party "may sell, lease, license, or otherwise dispose of any or all of the collateral . . . . *Id.* § 9.610(a). If the secured party

undertakes to dispose of the collateral, "[e]very aspect" of the disposition "must be commercially reasonable," including "the method, manner, time, place, and other terms." *Id.* § 9.610(b). If commercially reasonable, "a secured party may *dispose* of collateral *by public or private proceedings* . . . and at any time and place and on any terms." *Id.* (emphasis added). However, the secured party may not *purchase* the collateral at a private sale if the collateral is not "of a kind that is customarily sold on a recognized market or the subject of widely distributed standard price quotations." *Id.* § 9.610(c)(2) (emphasis added).

Cauthen argues, as she did in the trial court, that section 9.610 cannot apply because her minority interest in a limited partnership it is not the kind of property "that is customarily sold on a recognized market or the subject of widely distributed standard price quotations" as section 9.610(c) requires, and therefore the private sale was governed by section 9.620. *See id.* § 9.610 cmt. 7 (explaining that a secured party's purchase of collateral at its own private disposition is equivalent to a "strict foreclosure" and is governed by sections 9.620, 9.621, and 9.622). Section 9.620(a) governs a secured party's acceptance of collateral in full or partial satisfaction of a debt, and requires that either (1) the debtor consents to the secured party's acceptance in the manner specified in the statute, or (2) the secured party does not timely receive notice of an objection to the secured party's proposal by the debtor or other interested persons. *See id.* § 9.620(a). Cauthen argues that there is no evidence that Bruce complied with the requirements of section 9.620(a). Accordingly, Cauthen maintains, she was entitled to summary judgment on her wrongful foreclosure claim. *See id.* § 9.625.

On appeal, Bruce does not dispute that section 9.610(c) precludes him from purchasing Cauthen's minority interest in the Partnership at a private sale. Instead, Bruce argues that the UCC permits section 9.610(c) to be modified by agreement

of the parties, noting that section 9.610(c) is not included in the list of mandatory provisions that may not be waived or varied. *See id.* § 9.602 (prohibiting a debtor or obligor from waiving or varying certain statutory provisions of the Code). According to Bruce, the limited partnership agreement reflects the parties' agreement that the foreclosure sale of any limited partnership interest as collateral would be in a private sale to a restricted class of purchasers who would buy the partnership interest as an investment and not for resale, and that Bruce meets the contractual definition of such a purchaser. Bruce also argues that by signing the limited partnership agreement, Cauthen agreed that the private sale was commercially reasonable.

As support for his position, Bruce points to the entirety of Paragraph 7.2 of the limited partnership agreement:

> (b) Foreclosure. Each Partner, by signing this Agreement, shall be deemed to have granted a lien to the Partnership and the non-Defaulter, in the event that such Partner becomes a Defaulter, securing the payment of all sums required to be paid and performance of all covenants required to be performed by the Defaulter, and securing the Partnership and the non-Defaulter against any loss, cost or expense resulting from the default of the Defaulter, and the Partnership or the non-Defaulter as secured parties may foreclose the lien in the manner provided under the Texas Business and Commerce Code (the "UCC"). If, upon an Event of Default the Defaulter's interest in the Partnership is disposed of, 10 days' notice by the Partnership or by any Partner is reasonable notice under any provision of the UCC requiring notice. The Partners acknowledge that the Partnership or the non-Defaulter may be unable to effect a public sale of any or all of the Defaulter's interest in the Partnership by reason of certain prohibitions contained in the Securities Act of 1933, as amended, and applicable state securities laws, and may be compelled to resort to one or more private sales to a restricted group of purchasers who will be obligated to agree, among other things, to acquire the Defaulter's interest in the Partnership for their own respective accounts for investment and not with a view to distribution or resale. The Partners acknowledge that

10

any private sale may result in prices or other terms less favorable to the seller than if the sale were a public sale. Notwithstanding those circumstances, each Partner agrees that a private sale is commercially reasonable, and neither the Partnership nor the non-Defaulter is under any obligation to take any steps in order to permit the Defaulter's interest in the Partnership to be sold at a public sale. . . .

Bruce also points to the testimony of his expert, Allyn Needham, who averred that "the transactions and activities that led to the sale of Misty Cauthen's interest in Kingwood Place are consistent with the wording of the limited partnership and my experience in reviewing other limited partnerships' transactions." Needham further opined that the limited partnership agreement "anticipates and agrees to the potential purchase of a defaulting limited partner's interests in a private sale" and that "[t]he limited partnership agreement also anticipates and agrees that a creditor limited partner may purchase the defaulter's interest in a private sale."

In construing a contract, we must ascertain the true intentions of the parties as expressed in the writing itself. *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341, S.W.3d 323, 333 (Tex. 2011). Initially, we note that Paragraph 7.2(b) of the limited partnership agreement grants a lien to both the Partnership and the non-defaulting partner to secure another partner's debt. The agreement also authorizes foreclosure on the lien in accordance with the provisions of the UCC: "the Partnership or the non-Defaulter as secured parties may foreclose the lien in the manner provided under the Texas Business and Commerce Code (the 'UCC')." As mentioned above, the UCC contemplates that a secured party may dispose of collateral by commercially reasonable proceedings that may be either public or private. *See id.* § 9.610(b). Consistent with this provision, Paragraph 7.2(b) reflects the parties' agreement that the sale of an interest in the Partnership via a public sale may be problematic, requiring a private sale "to a restricted group of purchasers" who would be obligated to agree to acquire the partnership interest as an

11

investment and "not with a view to distribution or resale." Further, the parties agreed that even though a private sale may result in "prices or other terms less favorable to the seller," such a sale "is commercially reasonable."

Notably, however, Paragraph 7.2(b) does not include any express language reflecting that the parties have agreed to modify section 9.610(c) of the UCC. Nor is there any language indicating an agreement permitting the secured party to acquire the defaulting party's partnership interest at a private sale. Further, the agreement does not modify section 9.610(c) to say that the potential purchaser may also be the limited partner who is also the secured party. Indeed, the lack of any express language providing that the secured party may purchase the defaulting partner's partnership interest at a private sale in direct contravention of the UCC militates against Bruce's argument that the parties intended and agreed to modify section 9.610(c) to permit such a transaction.

We conclude that nothing in Paragraph 7.2(b) of the limited partnership agreement modifies section 9.610(c) to permit Bruce to acquire Cauthen's interest at a private sale. Nor does Needham's testimony raise a fact issue precluding a partial summary judgment in Cauthen's favor. Needham's bare assertion that the limited partnership agreement "anticipates and agrees that a creditor limited partner may purchase the defaulter's interest in a private sale" is unsupported by any evidence or substantive analysis, and is therefore conclusory and no evidence. *See Elizondo v. Krist*, 415 S.W.3d 259, 264 (Tex. 2013) ("A conclusory statement of an expert witness is insufficient to create a question of fact to defeat summary judgment").[3] Moreover, his testimony is also no evidence to the extent it addresses

---

[3] Similarly, Needham's statement that "the transactions and activities that led to the sale of Misty Cauthen's interest in [the Partnership] are consistent with the wording of the limited partnership and my experience in reviewing other limited partnerships' transactions" is vague, unsupported by any evidence, and lacks any demonstrable and reasoned basis on which to

pure questions of law. *See Greenberg Traurig of N.Y., P.C. v. Moody*, 161 S.W.3d 56, 94 (Tex. App.—Houston [14th Dist.] 2004, no pet.). Consequently, we reject Bruce's argument that a fact issue exists as to whether the limited partnership agreement modified section 9.610(c) to permit Bruce, as the secured party, to acquire Cauthen's partnership interest at a private sale.

Bruce additionally argues that the partnership agreement's language and Needham's testimony establishes that the private sale was commercially reasonable. Therefore, Bruce maintains, the sale fits within the Code's safe harbor provision that "a disposition of collateral is made in a commercially reasonable manner" if the disposition is made "in conformity with reasonable commercial practices among dealers in the type of property that was the subject of the disposition." *See id.* § 9.627(b)(3). But this argument is irrelevant because the dispute is not whether some aspect of the *disposition* of Cauthen's minority interest in the Partnership was commercially unreasonable; the issue is whether Bruce, as the secured party, *acquired* Cauthen's minority interest in violation of the UCC.

On appeal, Bruce does not challenge the grounds for Cauthen's partial summary-judgment motion other than to argue that the private sale was governed by section 9.610 as modified by the limited partnership agreement and was commercially reasonable, arguments we have rejected. We therefore overrule Bruce's first issue.

## II. The Exclusion of Bruce's Testimony

In his second issue, Bruce contends that the trial court erred in excluding his trial testimony concerning his belief that he was complying with the law when he

---

evaluate his opinion that Bruce's acquisition of Cauthen's interest was consistent with either the language of the limited partnership agreement or other limited partnerships' transactions. *See Elizondo*, 415 S.W.3d at 264–65.

foreclosed on Cauthen's partnership interest and that he intended to appeal the trial court's decision. We review a trial court's evidentiary rulings for abuse of discretion. *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 906 (Tex. 2000). We will not reverse the ruling unless the trial court's error probably caused the rendition of an improper judgment. *Id.*

According to Bruce, the testimony was necessary to set out Bruce's motivations behind his actions, which was "critical evidence" for the jury's consideration of Cauthen's claims for breach of the duty of loyalty and exemplary damages. Bruce also complains that the trial court admonished him "in the strongest terms" that both he and his counsel would be subject to sanctions if he continued to provide such testimony. Thus, instead of giving truthful answers, Bruce contends that he was required to repeatedly "admit" that the trial court had concluded that he "knowingly acted wrongfully in foreclosing on Cauthen's interest," and that the exclusion of his "truthful testimony" probably caused the rendition of an improper judgment.

In his brief, Bruce does not cite to the record other than the page where the trial court admonished Bruce and his counsel. A review of the proceedings leading up to the admonishment shows that Bruce had testified several times that he disagreed with the trial court's ruling and believed that he had followed the law in foreclosing on Cauthen's partnership interest. During the second day of his testimony, Bruce again disagreed that he obtained Cauthen's partnership interest in violation of the law. At that point, the trial court excused the jury and made the following statement:

> The Court: Outside the presence of the jury, defendants in this case have taken issue both in court prior to trial and apparently during [the] course of this trial with the Court's ruling on the wrongful foreclosure action. Defendants have every right to appeal this Court's

14

decision, but have no right to question this Court's decision in front of a jury. It is not within the jury's province to reconsider this Court's decision.

The next time defendants either through counsel or through a witness question this Court's decision, they will be sanctioned either individually as counsel or individually as a witness.

Bruce does not point to a single instance in which, over counsel's objections, he was subsequently forced by the trial court to "admit" that the trial court had concluded that he knowingly acted wrongfully in foreclosing on Cauthen's partnership interest, prevented from testifying as to his motivation for his actions at the time, or required to testify untruthfully. Nor does Bruce cite to any evidence or controlling legal authority to support his contention that continued testimony concerning his belief that he was following the law and intended to appeal was controlling on a material issue. Because Bruce has inadequately briefed this issue, we do not consider it. *See* Tex. R. App. P. 38.1(i); *Canton-Carter v. Baylor Coll. of Med.*, 271 S.W.3d 928, 931 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (stating that the appellate briefing requirements are not satisfied by merely uttering brief, conclusory statements unsupported by legal citations or substantive analysis).

Even assuming the issue was not waived, we cannot say that the trial court abused its discretion by ordering Bruce and his counsel to cease relitigating before the jury a matter previously determined as a matter of law. Further, because the record shows that Bruce had already testified several times concerning his disagreement with the trial court's ruling, more of the same would merely have been cumulative of the evidence already in the record.[4] Bruce made no offer of proof showing how additional evidence would have differed. *See* Tex. R. Evid.

---

[4] Bruce acknowledges in his reply brief that his complaint is that he "was not allowed to *continue* testifying concerning his contemporaneous belief that he was complying with the law or his intent to appeal the Trial Court's decision."

15

103(a)(2). Thus even if the trial court's ruling was error, it was not harmful error. *See Tex. Dept. of Transp. v. Able*, 35 S.W.3d 608, 618 (Tex. 2000) (holding that exclusion of cumulative testimony was not harmful error). We therefore overrule Bruce's second issue.

## III.    Denial of JNOV on Cauthen's Wrongful Foreclosure Claim

In his third issue, Bruce contends that the trial court erred in denying his JNOV and a directed verdict on Cauthen's wrongful foreclosure claim. Within this issue, Bruce complains that (1) the court's charge was erroneous, and (2) Cauthen failed to present any evidence of the proper measure of damages.

The trial court has wide discretion to determine the sufficiency of definitions and instructions in the charge. *Plainsman Trading Co. v. Crews*, 898 S.W.2d 786, 791 (Tex. 1995). An error in the charge will be reversed only if it probably caused rendition of an improper judgment or probably prevented the appellants from properly presenting the case to the appellate court. Tex. R. App. 44.1(a); *Bed, Bath & Beyond, Inc. v. Urista*, 211 S.W.3d 753, 757 (Tex. 2006).

A trial court may disregard a jury's verdict and render a JNOV if no evidence supports one or more of the jury's findings or if a directed verdict would have been proper. *Tiller v. McLure*, 121 S.W.3d 709, 713 (Tex. 2003). We review directed verdicts under the same legal-sufficiency standard that applies to no-evidence summary judgments. *City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005). The evidence is legally sufficient if it would enable reasonable and fair-minded people to reach the verdict under review. *Id.* at 827.

### A.    The Court's Charge

Bruce first argues that, because the trial court's pre-trial ruling that Bruce had wrongfully foreclosed on Cauthen's partnership interest in violation of the

UCC was error, the trial court erred by failing to present a liability question on wrongful foreclosure in the charge. As discussed above, we have concluded that the trial court did not err; therefore, we overrule Bruce's initial complaint.

Bruce next contends that the trial court erroneously instructed the jury by presenting an improper measure of damages in Jury Question No. 1, which asked the jury to determine Cauthen's damages caused by Bruce's wrongful foreclosure on her limited partnership interest. According to Bruce, when determining the fair market value of a limited partnership interest, the calculation must include any applicable discounts for lack of control and lack of marketability. Bruce points out that Jury Question No. 1 expressly instructed the jury not to include in its answer any discount for lack of marketability or lack of control.

Although the jury was expressly instructed not to include discounts for lack of control or lack of marketability in its answer to Jury Question No. 1, the trial court separately asked the jury to determine the applicable percentages for each discount in Jury Question No. 3:

> **What discount should be applied, if any, to the fair market value of Misty Cauthen's 39.6% limited partnership interest in Kingwood Place Investments #1, LP as of March 6, 2014?**
>
> **Answer in percentage points, if any**
>
> 1.  Lack of Marketability
>
> Answer  _____%
>
> 2.  Lack of Control
>
> Answer  _____%

The jury answered "0" to both questions.

Bruce's argument neglects to mention that the jury was separately instructed

17

to consider whether either discount applied and, if so, by what percentage. Moreover, whether and to what extent each of these discounts applied was hotly contested at trial. On this record, we conclude that the trial court did not err by separately submitting the damages issues in this way.

### B.     Evidence of Fair Market Value

In his second sub-issue, Bruce argues that the trial court should have granted his motion for JNOV (and motion for directed verdict) because Cauthen failed to present any evidence of the fair market value of her interest in the limited partnership.

Bruce argues that Cauthen's expert, James Trippon, agreed that a fair market valuation included discounts for lack of marketability and lack of control, and conceded that he "had not performed a fair market valuation" of Cauthen's limited partnership interest. Bruce claims that it is self-evident that Cauthen's interest in the Partnership lacked control because it was a minority interest, and Cauthen's failure for over a year to obtain a meaningful offer on her interest conclusively demonstrates its lack of marketability.

Trippon is a Certified Public Accountant who was retained to determine the amount of Cauthen's damages resulting from the loss of her 39.6% interest in the Partnership. Trippon explained that because the Partnership was a "single asset entity" as opposed to an active business, the value of the Partnership's land was an appropriate starting point. Indeed, both Trippon and Bruce's expert, Needham, used the same land value in their calculations.[5] Unlike Needham, however, Trippon did not apply discounts for lack of control and lack of marketability. Trippon

---

[5] Needham performed two valuations, one based on an appraisal of the land performed by Russ Gressett, a commercial real estate appraiser retained by Cauthen, and another based on a Montgomery County property tax appraisal. Needham acknowledged, however, that Gressett's analysis was the more reliable appraisal.

testified that he did not apply a lack-of-control discount because "the guy buying it already had control of it. So if anything, it's worth more to him than fair market value, but it's certainly not worth less." Trippon also explained that he did not apply a lack-of-marketability discount because the Partnership's sole asset is a single piece of undeveloped land that could simply be marketed for sale. For that reason, Trippon opined that he saw no reason to apply the discount, particularly in Houston where there was a ready market for property in prime locations.

Bruce relies on Trippon's acknowledgement during cross-examination that he did not perform a "fair market value calculation" of Cauthen's limited partnership interest. But Bruce takes Trippon's statement out of context. A review of Trippon's testimony in context reveals that Bruce's attorney was making a distinction between a fair market value calculation and Cauthen's damages calculation, which included subtracting roughly $51,000.00 (representing Cauthen's proportionate share of the mortgage payments made on the land) from the fair market value. Bruce's attorney asked Trippon a series of questions concerning whether Trippon had an opinion on how that $51,000.00 should be characterized, but ultimately he declined to ask Trippon to give his opinion. Trippon's testimony does not reflect, as Bruce suggests, that Trippon failed to consider whether certain discounts applied to the valuation of Cauthen's interest in the Partnership.

In summary, Trippon explained the basis for his damages calculation in detail, including his reasoning in declining to apply any discounts, and he concluded that Cauthen's damages were $469,044.73—the same amount found by the jury. Because this evidence supports the jury's finding on the amount of damages, the trial court did not err by refusing to grant Bruce's JNOV or directed verdict. We overrule Bruce's third issue.

19

**IV.    Directed Verdict for Cauthen on Breach of Contract Claim**

In his fourth issue, Bruce contends that the trial court erred by granting a directed verdict to Cauthen on her breach of contract claim based on the limited partnership agreement. The entirety of Bruce's argument on this issue is that the trial court erred because Cauthen's motion for directed verdict "was granted in part on the Partial Summary judgment of Wrongful Foreclosure and the previously discussed testimony of David Bruce influenced by the Court's erroneous instructions to the witness."

We have already held that the trial court did not err by ruling on the partial summary judgment in Cauthen's favor and by ordering Bruce and his counsel to refrain from continuing to express disagreement with the trial court's ruling in front of the jury. To the extent that Bruce's argument may be construed as a complaint that the evidence did not support the trial court's ruling, he has waived his complaint because he does not direct us to any evidence of probative force raising an issue of material fact precluding the directed verdict or cite to any relevant authorities. *See* Tex. R. App. P. 38.1(i). Even if not waived, we would conclude, based on the evidence presented, that Cauthen conclusively established her right to a directed verdict on her breach of contract claim. We therefore overrule Bruce's fourth issue.

**V.    Denial of JNOV on Cauthen's Claim for Breach of contract Damages**

In his fifth issue, Bruce contends that the trial court erred in denying a JNOV on the breach of contract damages found by the jury. In Jury Question No. 2, the jury was asked to determine Cauthen's damages, if any, resulting from Bruce's failure to comply with the limited partnership agreement. The jury found damages of $469,044.73.

Although Bruce's argument is not entirely clear, Bruce appears to argue, as he did in his third issue, that the proper measure of damages would have been the fair market value of Cauthen's interest in the Partnership. As we have explained, the jury determined in a separate question that no discounts should be applied to the fair market value of Cauthen's 39.6% limited partnership interest, and the evidence was legally sufficient to support the jury's damages finding, which was the same amount the jury found for breach of contract. For the reasons previously discussed in our analysis of Bruce's third issue, we likewise overrule Bruce's fifth issue.

## VI.    Denial of JNOV on Cauthen's Breach of Loyalty Claim

In his sixth issue, Bruce contends that the trial court erred by denying a JNOV for Bruce on Cauthen's claim for "breach of fiduciary duty/the duty of loyalty." Within this issue, Bruce argues that (1) the jury question on breach of the duty of loyalty should have placed the burden of proof on Cauthen rather than Bruce; and (2) there is no or insufficient evidence to support the jury's finding that Bruce violated this duty.

Bruce prefaces these issues with a recitation of several provisions of chapter 152 of the Business Organization Code concerning a partner's duty of loyalty to the partnership and other partners in a general partnership. *See* Tex. Bus. Orgs. Code § 152.204, § 152.205.[6] Bruce also points to section 152.210, which provides that a partner's liability is limited to either a breach of the partnership agreement or a violation of partnership duties as provided under chapter 152 of the Business

---

[6] Chapter 153 specifically addresses limited partnerships, but provides for some overlap with chapter 152. *See* Tex. Bus. Orgs. Code § 153.003(a) ("Except as provided by Subsection (b), in a case not provided for by this chapter and the other limited partnership provisions, the provisions of Chapter 152 governing partnerships that are not limited partnerships and the rules of law and equity govern.").

21

Organizations Code. *See id.* § 152.210.

Bruce maintains that these statutes reflect that the duty of loyalty owed by limited partners and general partners to the partnership and other partners is more limited than common-law fiduciary duties. *See id.* § 152.204(c) ("A partner does not violate a duty or obligation under this chapter or under the partnership agreement merely because the partner's conduct furthers the partner's own interest."); § 152.204(d) ("A partner, in the partner's capacity as partner, is not a trustee and is not held to the standards of a trustee."). Bruce also argues that the interest of the partnership and its partners "do not need to be exactly co-extensive" and that only transactions that are actually "adverse to the partnership" are barred by the duty of loyalty. *See id.* § 152.205(2)–(3) (providing that a partner's duty of loyalty includes "refraining from dealing with the partnership on behalf of a person who has an interest adverse to the partnership" and "refraining from competing or dealing with the partnership in a manner adverse to the partnership").

## A. The Court's Charge

Bruce first contends that the jury question on this issue erroneously placed the burden of proof on Bruce to prove that he complied with his duty of loyalty, rather than on Cauthen to prove that Bruce breached this duty. Bruce asserts that he objected to the form of the question and therefore the jury's answer should have been disregarded because the question was defective. In making this argument, Bruce does not make any reference to the Business Organizations Code provisions he cited previously, provide any citations to relevant authorities, or offer any discussion or meaningful analysis to support his premise. Because we are unable to discern the legal or factual basis for his complaint, we hold that Bruce has waived this issue due to inadequate briefing. *See* Tex. R. App. P. 38.1(i); *See Lundy v. Masson*, 260 S.W.3d 482, 503 (Tex. App.—Houston [14th Dist.] 2008, pet.

denied) (appellant's failure to support an issue with argument, authorities, or relevant facts to support a contention waives the contention).

To the extent that Bruce's appellate argument may be understood as a complaint that the burden of proof should be on Cauthen because a partner's duties as codified in chapter 152 of the Business Organizations Code are not the equivalent of common-law fiduciary duties,[7] we conclude that Bruce has failed to preserve such a complaint for appellate review because Bruce made a distinctly different objection in the trial court. Indeed, at the charge conference, Bruce's attorney appeared to concede that Bruce owed Cauthen a fiduciary duty and that Cauthen had the initial burden of proof, but that Bruce had presented evidence that shifted the burden back to Cauthen:

> [Bruce's attorney:] The first objection, Your Honor, is an objection that Question No. 4 is shifting the burden of proof to Mr. Bruce. While fiduciaries can have the burden of proof in breach of fiduciary duty cases, that burden is a - - a burden shifting is rebuttable and there are times where that can shift back to the fiduciary. In this case we believe the proper formulation of this question is the burden of proof should be on Ms. Cauthen as the fiduciary. We have shown why we did what we did and there is no question that there was [sic] fraud in the sense that, you know, we didn't lie about the numbers or anything. We have a disagreement over what should have been done. That should rebut the question and shift the burden back to Ms. Cauthen.

The test for determining whether a party has preserved error in the jury charge is whether the party timely and plainly made the trial court aware of the complaint and obtained a ruling. *State Dep't of Highways v. Payne*, 838 S.W.2d 235, 241 (Tex.1992); *Lundy*, 260 S.W.3d at 507; *see also* Tex. R. Civ. P. 274 (requiring a

---

[7] *See, e.g.*, *Lundy*, 260 S.W.3d at 507 (stating that "the profiting fiduciary has the burden of demonstrating the fairness of the transactions"); *Chien v. Chen*, 759 S.W.2d 484, 495 (Tex. App.—Austin 1988, no writ) ("All transactions between the fiduciary and his principal are presumptively fraudulent and void which is merely to say that the burden lies on the fiduciary to establish the validity of any particular transaction in which he is involved.").

23

party objecting to a charge to point out distinctly the objectionable matter and the grounds of the objection); Tex. R. App. P. 33.1(a)(1)(A) (complaint must be made "with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context"). Further, to preserve error for appeal, a party's argument on appeal must correspond with its argument in the trial court. *See, e.g.*, *Isaacs v. Bishop*, 249 S.W.3d 100, 113 n.13 (Tex. App.—Texarkana 2008, pet. denied); *Wolhfhart v. Holloway*, 172 S.W.3d 630, 639 (Tex. App.—Houston [14th Dist.] 2005, pet. denied). Because Bruce's objection at trial does not comport with any fair reading of his appellate argument, we overrule Bruce's complaint of charge error without reaching his arguments regarding the nature and extent of the duty of loyalty in the partnership context.

## B.    Sufficiency of the Evidence of Breach of Duty of Loyalty

Next, Bruce contends that there is no evidence or insufficient evidence to support a finding that Bruce's conduct breached the statutory duty of loyalty. Therefore, Bruce concludes, the trial court should have granted a JNOV in Bruce's favor, and erred by granting judgment to Cauthen based on the jury's finding that Bruce breached a duty of loyalty to Cauthen.

Bruce first states, without discussion, that "Texas's current Partnership Act contains a codification of the common law rule that parties to a contractual relationship are free to pursue their own interest without incurring tort liability even if doing so results in a breach of the contract," citing *Seymour v. American Grinding Co.*, 956 S.W.2d 49, 60 (Tex. App.—Houston [14th Dist.] 1996, writ denied). Bruce next argues, without citations to record evidence or relevant authorities, that there is no evidence to support the jury's finding that there was a breach of the duty of loyalty and no evidence that Bruce was acting in any manner adverse to the Partnership as a whole. Bruce further asserts—again without citation

24

to the record or relevant authorities—that he was acting in a manner he reasonably believed to be in the best interest of the partnership. Although Bruce appears to be attempting to articulate some argument concerning the parameters of his duty of loyalty based on the previously cited sections of the Business Organizations Code, we cannot discern from the scant discussion of this issue what that argument might be.

We conclude that this argument is inadequately briefed and therefore we do not consider it. *See* Tex. R. App. P. 38.1(i); *Howeth Invests., Inc. v. City of Hedwig Village*, 259 S.W.3d 877, 902 (Tex. App.—Houston [1st Dist.] 2008, pet. denied) (concluding that appellant's argument, which consisted of one paragraph with no citation to legal authority, was inadequately briefed); *Lundy*, 260 S.W.3d at 503 (concluding that appellant failed to provide argument or cite authority for contention on appeal and stating that appellate court was "not required to do the job of the advocate").

Further, more than sufficient evidence supports the jury's finding that Bruce breached the duty of loyalty to Cauthen as that duty was explained in the charge. Bruce did not merely "further his own interest" as he suggests; he admitted that he created a false debt to foreclose on Cauthen's partnership interest and take it for himself based on the value of the nonexistent debt, thereby obtaining Cauthen's interest in the partnership while paying her nothing for it through a "private foreclose sale" in violation of the UCC. And, contrary to Bruce's suggestion that a breach of contract does not necessarily result in tort liability, this was not an arm's-length transaction between strangers but an illegal acquisition of one partner's interest by another. There was also evidence that Bruce took advantage of Cauthen during a time when she was having financial difficulties after leaving Alliance, and he once warned her that "lawsuits weren't about who was right or wrong, but

whoever could spend the most money and last the longest." We overrule Bruce's sixth issue.

## VII. Exemplary Damages

In his seventh issue, Bruce contends that the evidence is insufficient to support the jury's finding that Bruce acted with malice. Bruce also argues that there is no evidence to support the amount of the award.

As discussed above, the trial was bifurcated at Bruce's request. *See* Tex. Civ. Prac. & Rem. Code § 41.009. In the first phase of the trial, the jury found by unanimous verdict that there was clear and convincing evidence that the harm to Cauthen from Bruce's breach of his duty of loyalty resulted from malice. Before the start of the second phase, both parties decided not to present any additional evidence, instead relying on the evidence presented in the first phase. After the parties' closing arguments, the jury returned another unanimous verdict, awarding exemplary damages of $1,200,000.00. The trial court reduced the award to $1,040,567.50 after applying the statutory cap on exemplary damages. *See* Tex. Civ. Prac. & Rem. Code § 41.008(b).

The entirety of Bruce's argument concerning the sufficiency of the evidence supporting the jury's finding that Bruce acted with malice consists of the single, conclusory sentence that "there was no evidence or factually insufficient evidence of a specific intent by David Bruce to cause substantial injury or harm to Cauthen." Therefore, Bruce asserts, "there was not clear and convincing evidence to support this answer as required by Tex. Civ. Prac. & Rem. Code § 41."

Bruce fails to direct us to any record evidence or provide any analysis explaining how the evidence presented to the trial court fails to meet the clear-and-convincing standard. We therefore hold that Bruce has waived any challenge to the

legal and factual sufficiency of the evidence to support the jury's finding of malice. *See* Tex. R. App. P. 38.1(i); *Siddiqui v. Fancy Bites, LLC*, No. 14-14-00384-CV, ___ S.W.3d ___, 2016 WL 4036341, at *20 (Tex. App.—Houston [14th Dist.] July 26, 2016, n.p.h.) (holding that appellant waived challenge to sufficiency of evidence to support award of exemplary damages by briefing waiver); *McCullough v. Scarbrough, Medlin & Assocs., Inc.*, 435 S.W.3d 871, 911–12 (Tex. App.— Dallas 2014, pet. denied) (same); *see also Rendleman v. Clarke*, 909 S.W.2d 56, 58–59 (Tex. App.—Houston [14th Dist.] 1995, writ dism'd as moot) (declining to reach the merits of appellant's challenge to the legal and factual sufficiency of the evidence to support the jury's finding of gross negligence when appellant failed to properly brief the issue).

Bruce next argues that the amount of the award is unsupported by any evidence because after bifurcation, no additional evidence of "any *Moriel* factors"[8] was presented at trial to support the amount of the award. Bruce makes no other reference to the case or identify the factors to which he alludes. Bruce merely concludes that "the award is supported only by the jury's biases and prejudices against Bruce and in favor of Cauthen as influenced by the erroneous ruling" on Cauthen's motion for partial summary judgment. Because Bruce fails to offer any substantive argument or analysis with citations to relevant authorities to support his argument that Cauthen was required to present some evidence in the second phase of the bifurcated trial to support the amount of damages awarded, we conclude that this issue also is inadequately briefed and decline to address it. *See* Tex. R. App. P. 38.1(i); *Canton-Carter*, 271 S.W.3d at 931. We overrule Bruce's seventh issue.

---

[8] Bruce does not include a citation to the case. Presumably, Bruce is referring to *Transportation Insurance Co. v. Moriel*, 879 S.W.2d 10 (Tex. 1994), *superseded by statute as stated in U-Haul Int'l, Inc. v. Waldrip*, 380 S.W.3d 118 (Tex. 2012).

## VIII.  Attorney's Fees

In his eighth issue, Bruce contends that the trial court erred by awarding Cauthen attorney's fees. Within this issue, Bruce argues that Cauthen is not entitled to attorney's fees because she: (1) elected to recover on the tort claim of breach of fiduciary duty[9] for which fees are not recoverable; (2) failed to segregate fees; and (3) improperly claimed expert fees as legal fees. Because we conclude that Cauthen was not entitled to an award of attorney's fees based on her election to recover actual and exemplary damages for breach of fiduciary duty, we address only that argument and do not reach Bruce's additional arguments.

In Texas, a party may not recover attorney's fees from the opposing party unless an award of attorney's fees is authorized by statute or contract. *See Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 310 (Tex. 2006). This rule is so ubiquitous it has come to be known as the "American Rule." *Id.* at 310–11. As a corollary to that rule, it has long been recognized that party may not recover its attorney's fees incurred in an action based on a tort claim. *See Turner v. Turner*, 385 S.W.2d 230, 233 (Tex. 1964) ("[A]ttorney's fees incurred by a party to litigation are not recoverable against his adversary . . . in an action in tort . . . ."). Breach of fiduciary duty is a tort claim for which attorney's fees generally may not be recovered. *See, e.g.*, *DeNucci v. Matthews*, 463 S.W.3d 200, 209 (Tex. App.—Austin 2014, no pet.); *Hollister v. Maloney, Martin & Mitchell LLP*, 2013 WL 2149823, at *2 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (citing *Willis v. Donnelly*, 118 S.W.3d 10, 44 (Tex. App.—Houston [14th Dist.] 2003, *aff'd in part and rev'd in part on other grounds*, 199 S.W.3d 262 (Tex. 2008)); *Potter v. GMP, LLC*, 141 S.W.3d 698, 705 (Tex. App.—San Antonio 2004, pet. dism'd).

---

[9] Cauthen's election identified her claim for breach of the duty of loyalty as a "breach of fiduciary duty" claim, therefore we will address it as such in our discussion of this issue.

28

Nevertheless, Cauthen argues that she is entitled to recover attorney's fees for breach of contract in this case because her breach of fiduciary duty claim is based on and "intertwined with" Bruce's breach of the limited partnership agreement. Cauthen acknowledges that she elected to recover on her fiduciary duty claim, but points out that the trial court granted her motion for directed verdict on her claim that Bruce breached the limited partnership agreement, she requested attorney's fees under Texas Civil Practice and Remedies Code section 38.001(8), and the trial court awarded attorney's fees pursuant to the statute. Cauthen asserts that when the breach of fiduciary duty "subsumes a breach of contract and vice versa," and when the plaintiff receives jury findings on both theories, Texas courts have permitted recovery of exemplary damages and attorney's fees in addition to actual damages.

In support of her contention, Cauthen primarily relies on two cases: *McGuire v. Kelley*, 41 S.W.3d 679, 683 (Tex. App.—Texarkana 2001, no pet.) (holding that when client obtained favorable jury findings against her attorney for breach of fiduciary duty, breach of contract, and fraud, and client elected to recover on fiduciary duty claim, client was entitled to award of attorney's fees because the acts of the attorney constituted both a breach of fiduciary duty and a breach of contract); and *Rodgers v. RAB Investments, Ltd.*, 816 S.W.2d 543, 550 (Tex. App.—Dallas 1991, no writ) (affirming award of attorney's fees in partnership dispute when breach of fiduciary duty was predicated on conduct that breached the parties' agreement). Based on this line of cases, Cauthen asserts that because the acts constituting breach of fiduciary duty were also violations of the limited partnership agreement, she should be awarded her attorney's fees.

This court applied similar reasoning in *Gill Savings Association v. Chair King*, concluding that an award of attorney's fees was permissible in a fraud case

29

because "there was a claim for and a finding of breach of contract, and the tort complained of arose out of that breach." 783 S.W.2d 674, 680 (Tex. App.—Houston [14th Dist.] 1989), *aff'd in part, modified in part on other grounds*, 797 S.W.2d 31 (Tex. 1990) (per curiam). The court also concluded that attorney's fees were properly awarded when the claims were based on the same set of facts or circumstances and thus were "intertwined to the point of being inseparable" such that recoverable attorney's fees could not be segregated from non-recoverable attorney's fees. *See id.* The Supreme Court of Texas, in *Stewart Title Guaranty Co v. Sterling*, cited with approval *Gill Savings*'s discussion of this exception to the general rule that recoverable attorney's fees must be segregated from those that are not recoverable. *See* 822 S.W.2d 1, 11–12 (Tex. 1991) ("Therefore, when the causes of action involved in the suit are dependent upon the same set of facts or circumstances and thus are 'intertwined to the point of being inseparable,' the party suing for attorney's fees may recover the entire amount covering all claims." (citing *Gill Savings*, 783 S.W.2d at 680)).

Fifteen years later, the Supreme Court revisited the application of *Sterling*'s "inextricably intertwined" exception to the requirement that fees be segregated and concluded that this exception "threatened to swallow the rule." *Chapa*, 212 S.W.3d 311. The court explained that "[t]o the extent Sterling suggested that a common set of underlying facts necessarily made all claims arising therefrom 'inseparable' and all legal fees recoverable, it went too far." *Id.* at 313. Consequently, the *Chapa* court reaffirmed the general rule requiring that recoverable attorney's fees be segregated from those that were non-recoverable, and modified *Sterling* to hold that "[i]ntertwined facts do not make tort fees recoverable; it is only when discrete legal services advance both a recoverable and unrecoverable claim that they are so intertwined that they need not be segregated." *Id.* at 313–14.

More to the point in this case, the *Chapa* court also explained that, under the one-satisfaction rule, a party who prevails on more than one theory of liability for a single injury is limited to recover damages on only one of the theories:

> In entering judgment for Chapa on all her contract, fraud, and DTPA claims, the court of appeals violated the one-satisfaction rule. "There can be but one recovery for one injury, and the fact that . . . there may be more than one theory of liability[ ] does not modify this rule."
>
> Chapa alleged only one injury—delivery of a base-model Highlander rather than a Highlander Limited. While she could certainly plead more than one theory of liability, she could not recover on more than one.
>
> **For breach of contract, Chapa could recover economic damages and attorney's fees, but not mental anguish or exemplary damages. For fraud, she could recover economic damages, mental anguish, and exemplary damages, but not attorney's fees.** For a DTPA violation, she could recover economic damages, mental anguish, and attorney's fees, but not additional damages beyond $21,639 (three times her economic damages). **The court of appeals erred by simply awarding them all.**

*Id.* at 303–04 (internal citations omitted) (emphasis added).

A few years later, in *MBM Financial Corp. v. Woodlands Operating Co., L.P.*, the Supreme Court again revisited *Gill Savings* and expressly rejected a contention that *Gill Savings* supported a claim for attorney's fees based on the tort of fraud arising from a breach of contract:

> Alternatively, the Woodlands argues it is entitled to attorney's fees based on fraud arising from a breach of contract, pointing to this Court's reference to such an award in *Gill Savings Ass'n v. Chair King*. But in *Gill* we merely reinstated bankruptcy and appellate fees; we did not address the court of appeals' award of fees for both contract and fraud on the basis that they were inextricably intertwined. We explicitly rejected this intertwining exception in *Tony Gullo Motors I, L.P. v. Chapa* and reiterated that fees are not allowed for torts like fraud. **Thus, even if the Woodlands' fraud claim arose**

**from a breach of contract, that is no basis for an attorney's fee award.**

*Id.* at 666–67 (internal citations omitted) (emphasis added).

Although Cauthen emphasizes that in her case, she was successful on both her contract and breach of fiduciary duty claims, she elected to recover on her tort claim for the damages she suffered as a result of Bruce's conduct. Consequently, she was entitled to recover actual damages and exemplary damages for that claim, but not statutory attorney's fees for breach of contract. *See Chapa*, 212 S.W.3d at 303–304.[10] As *Chapa* makes clear, a plaintiff is entitled to elect to recover on the claim that will provide the greatest recovery, but she is limited to that recovery, which in this case is Cauthen's recovery of actual and exemplary damages in tort. *See id.*; *see also W. Reserve Life Assurance Co. of Ohio v. Graben*, 233 S.W.3d 360, 377–78 (Tex. App.—Fort Worth 2007, no pet.) (holding that as between clients' negligence and breach of fiduciary duty claims against brokerage firm and broker who sold them variable annuities, the latter afforded the greatest possible recovery and, further, holding that trial court erred by awarding attorney's fees because attorney's fees "are not available for a breach of fiduciary duty claim.").

Likewise, *MBM Financial* forecloses Cauthen's argument that she is entitled to recover statutory attorney's fees, after electing to recover on her tort claim, merely because Bruce's conduct constituting a breach of fiduciary duty "arose out of" Bruce's breach of the limited partnership agreement. See *MBM Financial Corp.* 292 S.W.3d at 666–67; *see also McCollough*, 435 S.W.3d at 917 (holding

---

[10] In a supplemental brief, Cauthen argues that attorney's fees have been awarded in other similar contexts, but the cases she cites are distinguishable because they either predate *Chapa*, do not involve an election of remedies, or concern whether a particular type of claim is in essence a contract action. In contrast, Cauthen prevailed on multiple theories of liability based on the same injury, and Cauthen elected to recover on a recognized tort claim for which attorney's fees are not recoverable.

that under a breach of fiduciary duty theory, a party can recover economic and exemplary damages, and receive an equitable disgorgement remedy, but cannot simultaneously recover attorney's fees or statutory damages on claims that all concerned the same conduct).

We hold that Cauthen, having elected to recover for breach of fiduciary duty, was not entitled to also recover statutory attorney's fees for breach of contract. However, "[a] party may seek recovery under an alternative theory if the judgment is reversed on appeal." *Boyce Iron Works, Inc. v. Sw. Bell Tel. Co.*, 747 S.w.2d 785, 787 (Tex. 1988). We have held that the trial court did not err by ruling in Cauthen's favor on her alternative theories of recovery, namely wrongful foreclosure and breach of contract. Therefore, a remand for a re-election of remedies would enable Cauthen to exercise her right to a judgment on the theory entitling her to the greatest relief, while preventing her from obtaining a double recovery, which is the only purpose for an election of remedies. *See Drury Sw., Inc. v. Louie Ledeaux #1, Inc.*, 350 S.W.3d 287, 293 (Tex. App.—San Antonio 2011, pet. denied). We therefore sustain Bruce's eighth issue, and reverse and remand the case for Cauthen to make a new election of remedies.

## CONCLUSION

We overrule Bruce's issues one through seven, but sustain Bruce's eighth issue. We reverse the trial court's judgment and remand the case for further proceedings consistent with this opinion.


/s/     Ken Wise
        Justice


Panel consists of Justices Busby, Donovan, and Wise.

33