**Motions to Strike Denied as Moot; Affirmed as Modified and Memorandum Opinion filed May 22, 2018.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-16-00436-CV

---

## IN THE MATTER OF THE MARRIAGE OF JAMES ROBERT MUGFORD AND LEANNA MARIA MUGFORD

---

**On Appeal from the 306th District Court
Galveston County, Texas
Trial Court Cause No. 15-FD-0708**

---

## M E M O R A N D U M    O P I N I O N

This appeal arises from a divorce and is brought by Leanna Maria Mugford ("appellant") challenging portions of the judgment in favor of James Robert Mugford ("appellee"). At issue were custody of a minor child and the division of marital property. We first address the arguments on appeal regarding custody before considering the claims relating to property.

# I. BACKGROUND

The parties are both Canadian citizens. Appellant moved into appellee's home (referred to as "the Alberta house"). After their child was born in 2010, they married in January 2011. In October 2013, appellee accepted employment in Texas. Along with appellant's two daughters from a prior marriage, the family moved to Friendswood, Texas. Their home (referred to as "the Friendswood house") was purchased in December 2013. The parties separated in March 2015. Trial was held in December of that same year.

The jury considered conservatorship and possession and access to the minor child. The jury named appellee and appellant as joint managing conservators. Appellant was given the exclusive right to designate the primary residence of the minor child with a geographic restriction.

The jury also considered issues pertaining to the characterization of the marital property. The jury found grounds existed for divorce on the basis of cruel treatment by both parties and adultery by appellee. The jury determined the characterization of eight items of property, six of which are challenged on appeal by appellant. The jury found a reimbursement claim was proved in favor of the community estate against appellee's separate estate. The jury answered no as to both parties' claims for waste.

The remaining issues, including the terms for possession of and access to the minor child and division of the marital estate, were decided by the trial court. The trial court entered a final decree of divorce on March 16, 2016. Appellant timely pursued this appeal.

## II.    CUSTODY ISSUES

### A.    *Geographic Restriction*

Appellant's first issue[1] claims the trial court erred by entering judgment containing a provision for a geographic area in which appellant is permitted to establish the minor child's primary residence which is at variance with, and smaller than, the geographic area found by the jury in answer to question number sixteen.[2] Specifically, appellant contends the jury allowed appellant a fifty-mile radius *from the city limits of Calgary,* Alberta Province, Canada, but the trial court's judgment only allows a thirty-mile radius. *See* Tex. Fam. Code § 105.002(c)(1)(E).

In question 16, the jury was asked to "State the geographic area within which the joint managing conservator must designate the child's primary residence." The jury answered, "Calgary, Canada & 50 mi outward radius –or– Galveston County & contiguous counties." The final decree of divorce provides appellant "shall have the exclusive right to designate the child's primary residence within Galveston County and counties contiguous thereto, and the city of Calgary, Canada and within 30 miles of the city limits of Calgary, Canada." Thus appellant incorrectly states the jury's verdict. The jury did not allow a fifty-mile radius "from the city limits." Giving the term radius its common, ordinary meaning, the jury's geographic restriction would be a straight line, 50 miles long, from the center of Calgary to the circumference of a circle. *See Radius,* Merriam–Webster Online Dictionary, http://www.m-w.com/dictionary/radius, (last visited May 16, 2018). The trial court's geographic restriction allows the child's primary residence to be within 30 miles "from the city

---

[1] Appellant's initial brief was superseded by a supplemental brief that differed from the initial only in that it included record references. We therefore refer to appellant's supplemental brief as appellant's brief.

[2] Appellant raised this issue in her motion for new trial. *See* Tex. R. App. P. 33.1(b).

limits." The record before this court does not reflect how far the city limits of Calgary are from its center and thus does not demonstrate that the trial court's geographic area is, in fact, smaller than that encompassed by the jury's verdict. However, in her prayer for relief appellant specifically requests modification of the final divorce decreed to "reflect the jury's verdict on the geographic restriction."

Section 105.002(c) of the Texas Family Code provides, in pertinent part, the court may not contravene a jury verdict on the issues of:

> (E) the determination of whether to impose a restriction on the geographic area in which a joint managing conservator may designate the child's primary residence; and

> (F) if a restriction described by Paragraph (E) is imposed, the determination of the geographic area within which the joint managing conservator must designate the child's primary residence.

The parties do not cite, and we are unaware of, any authority permitting the trial court to "clarify" an issue upon which a party has a right to a jury verdict. *Lenz v. Lenz*, 79 S.W.3d 10, 20 (Tex. 2002) (holding the plain language of section 105.002(c) meant that party was entitled to a jury verdict and the trial court was not authorized to contravene that verdict by imposing an additional geographical restriction). Appellee posits the trial court was attempting to avoid future quarrels over the geographic restriction. Be that as it may, the trial court did not enter the jury's verdict in its final divorce decree and, even if a trial court were permitted to "clarify" that verdict, this case did not call for it as a "50 mi outward radius" is readily ascertainable. Accordingly, appellant's issue is sustained.

B.      *Possession Order*

In her second issue, appellant argues the trial court erred by entering judgment granting appellee a standard possession order incorporating the "alternate beginning and ending possession time" found in section 153.317 of the Texas Family Code and

4

into the "over 100 miles" periods of possession found in section 153.313 of the Texas Family Code. Section 153.312 pertains to "Parents Who Reside 100 Miles or Less Apart" while the provisions applicable to "Parents Who Reside over 100 Miles Apart" are found in section 153.313. Section 153.317 sets forth "Alternative Beginning and Ending Possession Times" that modifies the possession times from a specific hour to when the time the child's school is either regularly dismissed or resumes after the weekend. *See* Tex. Fam. Code §§ 153.313(a); 153.317(a)(1), (2). Section 153.317 expressly provides that a standard possession order under sections 153.312, 153.314, and 153.315 may be so altered. *See* Tex. Fam. Code § 153.317. Appellant's complaint is that the trial court altered a standard possession order under section 153.313, which is not one of the sections specified in section 153.317.

Section 11(a)(c) of the final decree of divorce allows for alternate beginning and ending possession times when the parents reside 100 miles or less apart. *See* Tex. Fam. Code § 153.312. Appellant makes no complaint as to this part of the decree.

Section 11(1)(d) of the final decree of divorce also provides for alternate beginning and ending possession times when the parents reside more than 100 miles apart. However, the allowance for alternate beginning and ending possession times is conditioned upon appellee's presence in Canada. The decree states, "[p]rovided, however, if James Robert Mugford is not going to be in Canada in personal possession of the child after 6:00 p.m. on Sunday of his weekend possession, the period of possession shall end at 6:00 p.m. on Sunday." Thursday possession is limited as follows:

> Provided James Robert Mugford is in Alberta, Canada at the time of the scheduled visitation, James Robert Mugford shall have possession of the child on the Thursday immediately preceding the first, third and fifth Fridays of the month during the regular school term, beginning at

5

the time the child's school is regularly dismissed and ending at the time the child's school resumes on Friday. All Thursday periods of possession provided by this subsection (when parents reside more than 100 miles apart) shall take place in Canada.

The trial court made the following finding of fact regarding possession:

72.    The child will benefit from having regular and frequent contact with Petitioner. The Standard Possession Order with all elections, including Thursday and Sunday overnight, with the minor modifications added by the Court, provides for reasonable possession of the child for the Petitioner.

Further, as a matter of law the trial court concluded:

5.    Petitioner is entitled to possession of and access to the child as set out in the Final Decree of Divorce dated March 16, 2016. In light of the evidence at trial regarding work schedules, school schedules of the child, and the parties' circumstances, the periods of possession and access are as similar as possible to a Standard Possession Order; and the minor variations in the Order are in the best interest of the child. Tex. Fam. Code § 153.253.

Appellant's brief argued that alternate beginning and ending possession times are not a permissible election if the parents reside more than 100 miles apart because section 153.317 does not include section 153.313. Appellant made no argument against the trial court's modification under section 153.253.

Section 152.253 allows for modification of a standard possession order as follows:

The court shall render an order that grants periods of possession of the child as similar as possible to those provided by the standard possession order if the work schedule or other special circumstances of the managing conservator, the possessory conservator, or the child, or the year-round school schedule of the child, make the standard order unworkable or inappropriate.

Tex. Fam. Code § 153.253.

In response to appellee's brief, appellant's reply brief claimed, for the first time, the evidence was legally and factually insufficient to support the variation. In appellant's second supplemental brief is a table that represents she challenged finding of fact 72 and conclusion of law 5. We disagree. Appellant's second issue, as argued in her brief, only presented the issue of whether the variation was permitted by statute.

The rules of appellate procedure do not allow appellant to raise a new issue that was not discussed in her original brief, even if the new issue is raised in response to a matter in the appellee's brief. *Yeske v. Piazza Del Arte, Inc.*, 513 S.W.3d 652, 672 n.5 (Tex. App.—Houston [14th Dist.] 2016, no pet.); *Dallas Co. v. Gonzalez*, 183 S.W.3d 94, 104 (Tex. App.—Dallas 2006, pet. denied) ("A reply brief is not intended to allow an appellant to raise new issues."); *Lopez v. Montemayor*, 131 S.W.3d 54, 61 (Tex. App.—San Antonio 2003, pet. denied) (holding arguments raised for the first time in appellant's reply brief were not properly before the court). To allow an appellant to raise new issues in a subsequent brief would vitiate the briefing requirements of Texas Rule of Appellate Procedure 38.1. *See* Tex. R. App. P. 38.1(e) (An appellant's brief "must state concisely all issues or points presented for review."). Because appellant's brief did not contest the sufficiency of the evidence, we do not address it. *See Yeske*, 513 S.W.3d at 672 n.5; *see also* Tex. R. App. P. 38.1(e); *Dallas Co.*, 183 S.W.3d at 104; *Lopez*, 131 S.W.3d at 61.

By its plain language section 153.253 allows variation from the standard possession order. Tex. Fam. Code § 153.253. The trial court concluded that the evidence in the record of appellee's work schedule, the child's school schedule, and appellee's frequent travel to Canada supported a variation from the standard order. The trial court's order allowing alternate beginning and ending possession times

7

when, and only when, appellee is in Canada (similar to when the parties "Reside 100 Miles or Less Apart") is such a variation. For these reasons, we overrule issue two.

## III. PROPERTY ISSUES

In issues three through fifteen, appellant raises issues relating to that portion of the trial court's judgment ordering a division of the martial estate. We address these issues as appellant has grouped them.

### A. *Admission of Expert Testimony*

Appellant presents a single argument for issues three through six. We first note that appellant's combined argument fails to address her fourth issue — that the trial court erred by repeatedly overruling her objections that questions posed to appellee and his expert witness, William Stewart, called for testimony from a document not in evidence. An appellant's brief must contain a clear and concise argument that includes appropriate citations to legal authority and the appellate record. *See* Tex. R. App. P. 38.1(i); *Canton-Carter v. Baylor Coll. of Med.,* 271 S.W.3d 928, 931 (Tex. App.—Houston [14th Dist.] 2008, no pet.). Failure to cite legal authority or to provide substantive analysis of the legal issues presented results in waiver of the complaint. *Id.* Because appellant has inadequately briefed this issue, we do not consider it. *Bruce v. Cauthen*, 515 S.W.3d 495, 507 (Tex. App.—Houston [14th Dist.] 2017, pet. denied). Issue four is overruled.

Appellant's third issue claims the trial court abused its discretion in allowing Stewart to testify about the terms of the lines of credit used to purchase the Friendswood house because Stewart had never read those notes and/or contracts and they were not produced prior to trial pursuant to requests for discovery. *See* Tex. R. Civ. P. 196. Appellant then argues in issue five that the trial court abused its discretion in admitting Stewart's testimony and report, "save and except for opinions

regarding reimbursement claims," because he erroneously characterized the bank debt as appellee's separate liability and the resulting loan proceeds as appellee's separate property. Issues six contends the trial court abused its discretion in admitting Stewart's testimony because his misstatements of law rendered "his opinions concerning the marital character [of] the property in this estate incorrect, unreliable and misleading."

The record reflects appellant filed a pretrial motion to exclude Stewart's expert testimony. *See* Tex. R. Evid. 702; *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 558 (Tex. 1995); *see Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592–95, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). That motion was presented to the trial court and a hearing was held, after which the trial court overruled the motion. None of appellant's issues claim the trial court abused its discretion in overruling her motion but the entirety of her argument leads us to construe it to be one of admission of expert testimony rather than erroneous evidentiary rulings. *See* Tex. R. Evid. 702. To preserve a complaint that expert opinion evidence is inadmissible because it is unreliable, a party must object to the evidence before trial or when the evidence is offered. *Kerr–McGee Corp. v. Helton*, 133 S.W.3d 245, 251–52 (Tex. 2004) (abrogated on other grounds by *Coastal Transport Co. v. Crown Central Petroleum Corp.*, 136 S.W.3d 227, 233 (Tex. 2004)); *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 409 (Tex. 1998).[3] Accordingly, appellant's complaint was preserved.

---

[3] If a reliability challenge is restricted to the face of the record—*i.e.*, that it is allegedly speculative or conclusory on its face—a party may still challenge the legal sufficiency of the evidence in the absence of any objection to its admissibility. *Coastal Transport Co.*, 136 S.W.3d at 233.

The admissibility of expert testimony is governed by Rule 702.[4] Expert testimony is admissible if (1) the expert is qualified and (2) the testimony is relevant and based on a reliable foundation. *Cooper Tire & Rubber Co. v. Mendez*, 204 S.W.3d 797, 800 (Tex. 2006). Appellant does not challenge Stewart's qualifications or the relevancy of his testimony but only whether or not his testimony was based on a reliable foundation. We review the trial court's determination that expert testimony is admissible for abuse of discretion. *Taber v. Roush*, 316 S.W.3d 139, 148 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (citing *Mendez*, 204 S.W.3d at 800). The test for abuse of discretion is whether the trial court acted without reference to any guiding rules or principles. *Id.* Admission of expert testimony that does not meet the reliability requirement is an abuse of discretion. *Id.*

The trial court's task is not to determine whether the expert's conclusions are correct, but rather whether the analysis the expert used to reach those conclusions is reliable and therefore admissible. *TXI Transp. Co. v. Hughes*, 306 S.W.3d 230, 239 (Tex. 2010). The Texas Supreme Court identified six factors in *Robinson* to assist courts in determining the reliability of an expert's testimony.[5] However, those factors are not particularly helpful in assisting the trial court to determine the reliability of the proposed testimony of a CPA regarding the analysis of financial records, as occurred in this case. *See Paschal v. Great W. Drilling, Ltd.*, 215 S.W.3d

---

[4] Rule 702 provides "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." Tex. R. Evid. 702.

[5] Those factors include: (1) the extent to which the theory has been or can be tested; (2) the extent to which the technique relies upon the subjective interpretation of the expert; (3) whether the theory has been subjected to peer review and/or publication; (4) the technique's potential rate of error; (5) whether the underlying theory or technique has been generally accepted as valid by the relevant scientific community; and (6) the non-judicial uses which have been made of the theory or technique. *Robinson,* 923 S.W.2d at 557.

437, 448 (Tex. App.—Eastland 2006, pet. denied). Rather, the more appropriate test is the "general reliability" test set out in *Gammill v. Jack Williams Chevrolet, Inc.*, 972 S.W.2d 713, 726 (Tex. 1998). *Paschal,* 215 S.W.3d at 448 (holding *Gammill* test appropriate for expert testimony of a certified public accountant regarding analysis of financial records for tracing of embezzled funds). When experts rely on experience and training rather than a particular methodology to reach their conclusions, reviewing courts determine whether there may be "simply too great an analytical gap between the data and the opinion proffered" for the opinion to be reliable. *Gammill*, 972 S.W.2d at 726; *see also TXI Transp.*, 306 S.W.3d at 239 ("Reliability may be demonstrated by the connection of the expert's theory to the underlying facts and data in the case.").

The common core of appellant's issues is that Stewart mischaracterized property — namely the debt from the three lines of credit as appellee's separate liability and the distributions from Pangaea Ventures Fund ("Pangaea"),[6] as appellee's separate property. The record reflects the earnest money for the Friendswood house came from a line of credit in appellee's name that he opened in 2010 (referred to as "the 2010 line of credit"). Two other lines of credit were used to obtain the funds to pay the remaining balance on the purchase price at closing. A contested issue at trial and on appeal, addressed in the next section of this opinion, is whether those lines of credit should be characterized as a community liability.

As noted above, however, it was not for the trial court, and therefore not for this court, to determine the accuracy of Stewart's opinion. *See TXI Transp. Co.*, 306 S.W.3d at 239. As the trial court recognized in the hearing on appellant's motion to

---

[6] Although it is also spelled "Pangea" in the record and the briefs, the documentation for the fund reflects the correct spelling is "Pangaea," which we use throughout.

exclude, "the fact situation of what's separate and what's community" was not properly before it. Accordingly, issues three, five and six are overruled.

Contained within appellant's argument also are complaints that Stewart's tracing methodology was flawed and, therefore, unreliable. As the Texas Supreme Court has recognized, "[i]n some situations, the witness's skill and experience alone may provide a sufficient basis for the expert's opinion." *Volkswagen of Am., Inc. v. Ramirez*, 159 S.W.3d 897, 905 (Tex. 2004) (citing Tex. R. Evid. 702; *Gammill*, 972 S.W.2d at 726). The trial court had before it the tracing Stewart had performed and his resulting report.[7] The hearing record reflects the trial court considered Stewart's experience and training. The record demonstrates that Stewart's proffered opinion was based upon his experience tracing financial assets. Thus we cannot conclude the trial court abused its discretion in concluding Stewart's expert testimony was reliable.

B.    *Admission of Petitioner's Exhibit 130*

Appellant presents a single argument for issues seven through ten. In issues seven through nine, appellant claims the trial erred in admitting Petitioner's Exhibit 130 ("PE 130"). This exhibit is a copy of the loan document for the 2010 line of credit that was established by appellee with the Royal Bank of Canada prior to the marriage.

The record reflects appellant objected to the admission of PE 130 on the grounds it had not been produced in response to Production Number 15 of the third supplemental Request for Production. Appellant also claimed unfair surprise and denial of due process, failure to authenticate, and hearsay. Appellee acknowledged

---

[7] Stewart did not testify at the hearing on appellant's motion to exclude and no complaint is made on appeal as to the efficacy of the hearing that was held.

12

the document was not produced in discovery but stated the requests for production was limited in time to the start of the marriage and the document was dated well before that time.

On appeal, appellant claims the document was not produced in response to request for production numbers 10 and 21 and should therefore be excluded. *See* Tex. R. Civ. P. 193.6.[8] Appellant claims the admission was unfair and effectively denied her due process. Appellant further claims the document was not authenticated and was inadmissible hearsay.

Appellant has a footnote reciting requests for production 10 and 21 and appellee does not dispute that it is a correct recitation. However, appellant does not refer this court to the location of those requests in the record and the requests themselves fail to inform this court whether or not they were limited to a specific time period. At trial, appellant did not dispute appellee's claim that the requests did not cover the time period before the marriage. We have no duty to search a voluminous record without sufficient guidance from an appellant to determine whether an assertion of reversible error is valid. *Manon v. Solis*, 142 S.W.3d 380,

---

[8] Rule 193.6 provides, in pertinent part:

(a) Exclusion of Evidence and Exceptions. A party who fails to make, amend, or supplement a discovery response in a timely manner may not introduce in evidence the material or information that was not timely disclosed, or offer the testimony of a witness (other than a named party) who was not timely identified, unless the court finds that:

(1) there was good cause for the failure to timely make, amend, or supplement the discovery response; or

(2) the failure to timely make, amend, or supplement the discovery response will not unfairly surprise or unfairly prejudice the other parties.

(b) Burden of Establishing Exception. The burden of establishing good cause or the lack of unfair surprise or unfair prejudice is on the party seeking to introduce the evidence or call the witness. A finding of good cause or of the lack of unfair surprise or unfair prejudice must be supported by the record.

Tex. R. Civ. P. 193.6.

391 (Tex. App.—Houston [14th Dist.] 2004, pet. denied). Appellant's failure to cite to the relevant portion of the trial court record prevents this court from resolving this claim on its merits and therefore waives appellate review. *Id.*; Tex. R. App. P. 38.1(h). We overrule issue seven.

Appellant further complains on appeal that the document was not authenticated. Appellant asserts appellee provided two versions of the document, one signed by him but not the other, and that neither version was signed by anyone on behalf of the lender. We first note that the signature page, containing appellee's signature dated February 8, 2010, was admitted into evidence as PE 131. We are aware of no authority, and appellant cites none, that the document could not have been authenticated, or satisfied an exception to the hearsay rule, despite the lack of the bank's signature.

Appellant's brief contains no citations to authority or argument supporting her claim that she was denied due process. Her brief only states that she was denied due process. Appellant's brief fails to contain a clear and concise argument that includes appropriate citations to legal authority and the appellate record. *See* Tex. R. App. P. 38.1(i); *Canton-Carter,* 271 S.W.3d at 931. Thus the complaint is waived and we do not consider it. *Id.*; *Bruce*, 515 S.W.3d at 507.

Appellant further contends the document was not authenticated by testimony or a business records affidavit. The document was not accompanied by a business-records affidavit and therefore is not self-authenticating. *See* Tex. R. Evid. 902(10). However, Rule 901 of the Texas Rules of Evidence provides that "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Tex. R. Evid. 901(a). Appellee's uncontroverted testimony was that the document was scanned and e-mailed to him from the Royal Bank of Canada. The

admission and exclusion of evidence are within the sound discretion of the trial court. *Katy Springs & Mfg., Inc. v. Favalora*, 476 S.W.3d 579, 605 (Tex. App.—Houston [14th Dist.] 2015, pet. denied). Because the record contains evidence that the document is what appellee claimed it was, we cannot say the trial court abused its discretion by overruling appellant's authentication objection. *See Bay Area Healthcare Grp. Ltd. v. McShane*, 239 S.W.3d 231, 234 (Tex. 2007) (per curiam) (noting a trial court's evidentiary rulings will not be disturbed absent an abuse of discretion); *see also U–Haul Int'l Inc. v. Waldrip*, 380 S.W.3d 118, 132 (Tex. 2012) (recognizing a trial court abuses its discretion when it acts without reference to guiding rules or principles).

We now turn to appellant's hearsay complaint. Hearsay is a statement other than one made by the declarant while testifying at the hearing or trial that a party offers in evidence to prove the truth of the matter asserted in the statement. *See* Tex. R. Evid. 801(c). Hearsay is not admissible in evidence unless a statute, evidence rule, or other rule prescribed under a statute provides otherwise. Tex. R. Evid. 802. Appellee has made no claim, either at trial or on appeal that any of the exceptions to the rule against hearsay apply to the document in question. *See* Tex. R. Evid. 803. Accordingly we conclude the trial court erred in admitting the document over appellant's hearsay objection. However, this does not end our inquiry.

To obtain a reversal based upon the improper admission of evidence, the complaining party must show the trial court's error probably caused the rendition of an improper judgment. *Bhatia v. Woodlands N. Hous. Heart Ctr.*, 396 S.W.3d 658, 668 (Tex. App.—Houston [14th Dist.] 2013, pet. denied); Tex. R. App. P. 44.1 (a)(1). Error in the admission of evidence generally is not grounds for reversal unless the complaining party can demonstrate that the judgment "turns on" the challenged evidence. *Bhatia*, 396 S.W.3d at 668.

Appellant does not explain how the admission of PE 130 probably caused the rendition of an improper judgment. In fact, appellant's brief states that "any testimony about what [PE 130] says or does not say has no bearing on the issues of the marital property character of the Friendswood House." PE 130 sets forth the terms and conditions of the 2010 line of credit. The disputed issue was whether the agreement showed the creditor agreed to look solely to appellee's separate estate for satisfaction. *See Cockerham v. Cockerham*, 527 S.W.2d 162, 171 (Tex. 1975). Appellee had already testified that the line of credit was secured by his separate property. *See Nissan Motor Co. Ltd. v. Armstrong*, 145 S.W.3d 131, 144 (Tex. 2004) ("Clearly, erroneous admission is harmless if it is merely cumulative.") Accordingly, we cannot conclude that the erroneous admission of PE 130 probably caused the rendition of an improper judgment. *See* Tex. R. App. P. 44.1(a) (providing for reversal only if error probably caused rendition of improper judgment or probably prevented appellant from properly presenting case to court of appeals); *G & H Towing Co. v. Magee*, 347 S.W.3d 293, 297 (Tex. 2011) (per curiam) (harmless error rule applies to all errors). We overrule issues eight and nine.

Appellant's tenth issue complains she was not allowed to bring in her own expert after PE 130 was allowed into evidence. As noted above, appellant presented a single argument for issues seven through ten. Her brief contains no argument pertinent to this issue but only states "the trial court denied [appellant] the right to name a witness to respond . . .." Appellant fails to cite any authority or make any argument that the trial court erred or that any error was reversible. *See* Tex. R. App. P. 38.1(i); *Canton-Carter,* 271 S.W.3d at 931 (stating that an appellant's brief must contain a clear and concise argument that includes appropriate citations to legal authority and the appellate record). The complaint is waived because it was inadequately. *Bruce*, 515 S.W.3d at 507. Issue ten is overruled.

C.     *Characterization of Marital Property*

Issues eleven through fourteen are presented in a combined argument. Eleven through thirteen relate to the characterization of marital property; fourteen concerns appellant's reimbursement claims. Set forth below, in pertinent part, are the jury's findings as to these matters.

QUESTION 5

What percentage, if any, of *each of the following items* is the separate property of *JAMES ROBERT MUGFORD* and what percentage, if any, is the community property of the parties? . . .

| Property | [Appellee's] Separate Property Percentage | | Community Property Percentage | Total |
|---|---|---|---|---|
| **Real Property** | | | | |
| 2309 Taylor Sky Lane, Friendswood, Texas 77546 | 78% | + | 22% | = 100% |
| **Stocks, Bonds and Other Securities** | | | | |
| RBC PC Wealth Mgmt RRSP (CAD) Acct. 1060 (P) (previously 7343) in name of [appellee] | 72% | + | 28% | = 100% |
| RBC PC Wealth Mgmt LIRA (CAD) Acct. 1418 (P) (previously 0696) in name of [appellee] | 100% | + | 0% | = 100% |
| RBC PC Wealth Mgmt Securities Acct. 2931 (previously 1992 then 4756) in name of [appellee] | 95% | + | 5% | = 100% |
| **Limited Partnerships** | | | | |
| Pangaea Ventures Fund LP | 100% | + | 0% | = 100% |
| **Life Insurance** | | | | |
| SunLife Term Life Insurance policy in name of [appellee] | 100% | + | 0% | = 100% |

QUESTION 7

State in dollars the amount of the reimbursement claim, if any, proved in favor of–

*The community estate* against *JAMES ROBERT MUGFORD's separate estate.*

Answer: $12,020 USD

Appellant challenges these answers in issues eleven, twelve and fourteen. In issue eleven, appellant claims the evidence was legally and factually insufficient to support the jury's answers to jury question number five. Issue twelve argues the trial court erred in failing to grant appellant's motion to disregard the jury's answer to question number five with regard to the Friendswood House. In her fourteenth issue, appellant contends the evidence was legally and factually insufficient to support the jury's answer in question seven that the amount of the reimbursement claim proven in favor of the community estate against appellee's separate estate was $12,020.[9] Issue thirteen asserts the trial court erred in granting an objection made by appellee to appellant's attempted argument concerning Texas law on partition or exchange of community property. We begin by setting forth the relevant standard of review.

1. Applicable law

It is presumed that property possessed by either spouse during or on dissolution of marriage is community property. Tex. Fam. Code § 3.003(a). The degree of proof necessary to rebut that presumption is clear and convincing evidence. Tex. Fam. Code § 3.003(b). "Clear and convincing evidence" is that "measure or degree of proof that will produce in the mind of the trier of fact a firm

---

[9] We state all amounts in this opinion in United States' Dollars (usd) but due to the frequent lack of clarity in the testimony regarding the currency, all amounts should be considered approximations.

18

belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code § 101.007.

When a jury makes a finding that is required to be based on clear and convincing evidence, in conducting a legal sufficiency review we review all the evidence in the light most favorable to the jury's finding, taking into account contrary undisputed facts, to determine whether reasonable jurors could have formed a firm belief or conviction that these findings are true. *Qwest Int'l Commc'ns, Inc. v. AT & T Corp.,* 167 S.W.3d 324, 326 (Tex. 2005); *see also In re J.F.C.,* 96 S.W.3d 256, 264–68 (Tex. 2002) (discussing legal and factual sufficiency reviews in termination of parental rights appeal). When reviewing the factual sufficiency of the evidence to support a finding required to be based on clear and convincing evidence, we must give due consideration to any evidence the fact-finder could reasonably have found to be clear and convincing. *J.F.C.,* 96 S.W.3d at 266–67. We must consider the disputed evidence and determine whether a reasonable fact-finder could have resolved that evidence in favor of the finding. *Id.* The evidence is factually insufficient if, in light of the entire record, the disputed evidence that a reasonable fact-finder could not have credited in favor of its finding is so significant that a fact-finder could not have reasonably formed a firm conviction or belief. *Id.* (citing *In re C.H.,* 89 S.W.3d 17, 25 (Tex. 2002)). Both legal and factual sufficiency reviews of a finding, required to be based on clear and convincing evidence, must take into consideration whether the evidence is such that a fact-finder could reasonably form a firm belief or conviction about the truth of the matter required to be established by clear and convincing evidence. *J.F.C.,* 96 S.W.3d at 265–66; *C.H.,* 89 S.W.3d at 25.

19

The spouse claiming the separate nature of certain property generally must trace and clearly identify the property claimed to be separate. *Graves v. Tomlinson*, 329 S.W.3d 128, 139 (Tex. App.—Houston [14th Dist.] 2010, pet. denied). "Tracing involves establishing the separate origin of the property through evidence showing the time and means by which the spouse originally obtained possession of the property." *Id.* As a general rule, the clear and convincing standard is not satisfied by testimony that property possessed at the time of the marriage's dissolution is separate property when such testimony is contradicted or unsupported by documentary evidence tracing the asserted separate nature of the property. *Id.* A spouse is competent to testify about the character of his property; however, his testimony usually must be corroborated by other testimonial or documentary evidence to rebut the community-property presumption. *See Bahr v. Kohr*, 980 S.W.2d 723, 730 (Tex. App.—San Antonio 1998, no pet.); *Robles v. Robles*, 965 S.W.2d 605, 620 (Tex. App.—Houston [1st Dist.] 1998, pet. denied). A spouse's uncorroborated and uncontradicted testimony is sufficient to constitute clear and convincing evidence *Pace v. Pace*, 160 S.W.3d 706, 714 (Tex. App.—Dallas 2005, pet. denied). But a spouse's uncorroborated testimony that is contradicted "may not meet the clear and convincing standard." *Id*.

2. Financial accounts

We first consider the jury's answers to question five for the three RBC PC Wealth Management accounts (hereafter referred to as "Account 1060," "Account 1418," and "Account 2931"). We then turn to Pangaea, the SunLife Term Life Insurance policy ("SunLife"), and lastly the Friendswood house.

### a. Account 1060

According to Stewart's supplemental report, admitted into evidence as PE 42C, Account 1060 had a balance of $916,011. He attributed $249,363 to the community estate (which is more than twenty-seven percent but less than twenty-eight percent) and $666,647 to appellee's separate estate (which is more than seventy-two percent but less than seventy-three). The jury found seventy-two percent was appellee's separate property and twenty-eight percent was community property; twenty-eight percent of $916,011 is $256,483. Thus it appears the jury rounded-up regarding the community estate and rounded-down concerning the separate estate. Appellant does not refer this court to any contrary evidence. A reasonable fact finder could find that Stewart's uncontradicted testimony constituted clear and convincing evidence necessary to overcome the community property presumption and establish that at least seventy-two percent of Account 1060 was appellee's separate property.

### b. Account 1418

Appellee claimed $41,367.92 from Account 1418 as his separate property on his amended proposed property division, admitted into evidence as PE 41a. An inventory that is offered and admitted before the trial court as evidence is relevant to division of the parties' property. *Aduli v. Aduli*, 368 S.W.3d 805, 820 (Tex. App.—Houston [14th Dist.] 2012, no pet.). It was contradicted, however, by appellant's proposed property division, admitted into evidence as Respondent's Exhibit ("RE") 167. Appellant claimed that she was entitled to $24,821 of Account 1418, which she valued at $41,368. We have been unable to locate Account 1418 in Stewart's supplemental tracing report, admitted into evidence as PE 42c.

Our review of the record does not reveal any witness testified about Account 1418. Appellee's references to the record regarding this account are to PE 81, 81a,

21

81b, and 81c, which are bank statements concerning this account. Appellee offers no explanation as to how these exhibits support the jury's finding. On their face, these exhibits do not corroborate appellee's claim that Account 1418 was entirely his separate property. A reasonable fact finder could not find that appellee's uncorroborated and contradicted amended proposed property division constituted clear and convincing evidence necessary to overcome the community property presumption and establish that 100 percent of Account 1418 was appellee's separate property.

### c. Account 2931

On her proposed property division, appellant valued Account 2931 at $617,687 and attributed $247,075 to appellee and $370,612 to appellant. Appellee's amended proposed property division claimed Account 2931 as his separate property with a value of $508,536.42. The supplemental tracing report reflects Account 2931 had a balance of $649,014. Stewart attributed $31,327 to the community estate and $617,687 to appellee's separate estate and testified that ninety-five percent was appellee's separate property and five percent was community property. The jury found ninety-five percent to be appellee's separate property and five percent to be community property. Although appellee's testimony was contradicted by appellant, it was corroborated by Stewart. Thus a reasonable fact finder could find there was clear and convincing evidence necessary to overcome the community property presumption and establish that ninety-five percent of Account 2931 was appellee's separate property.

### d. SunLife

Appellee's amended proposed property division designated SunLife, which had no cash value, as his separate property. Appellant's proposed property division

did not characterize any percentage of the policy as community property. Appellant does not refer this court to any evidence contradicting appellee's claim. On appeal, appellant makes no argument SunLife was community property but asserts only that she was entitled to reimbursement for premiums paid for SunLife during the marriage (that argument will be considered in issue fourteen). Thus a reasonable fact finder could find there was clear and convincing evidence necessary to overcome the community property presumption and establish that 100 percent of SunLife was appellee's separate property.

### e. Pangaea

In his proposed property division, appellee claimed Pangaea as his separate property and valued it at $181,342. In appellant's proposed property division, Pangaea is identified as appellee's separate property with a value of $181,342. Thus appellant's own evidence corroborated appellee's claim. On appeal, appellant argues appellee paid presumptively community funds into Pangaea giving rise to a reimbursement claim in favor of the community against appellee's separate estate (to be addressed in issue fourteen below). Thus a reasonable fact finder could find there was clear and convincing evidence necessary to overcome the community property presumption and establish that 100 percent of Pangaea was appellee's separate property.

### f. Conclusion

Issue eleven is overruled, in part, regarding Accounts 1060, Account 2931, SunLife and Pangaea. As to Account 1418, issue eleven is sustained.

### 3. Friendswood house

The purchase price of the Friendswood house was approximately $985,000. The earnest money of $25,000 came from the 2010 line of credit. The full purchase price was paid at the time of closing. Those funds came from two additional lines of credit, one for $650,000 and the other for $100,000. Appellee subsequently paid $350,000 on the line of credit for $650,000. Stewart testified that according to his tracing, $338,000 of the $350,000 were separate funds from the sale of securities which were appellee's separate property. The remaining $12,000 came from community funds. Appellee also paid $75,000 on the $100,000 loan. Stewart testified that all of the money used to purchase the Friendswood house was appellee's separate property except for the above-mentioned $12,000. Appellee's amended proposed property division included a claim for reimbursement to the community estate from his separate estate for $12,020.

Stewart testified the only collateral for the 2010 line of credit was the Alberta house. According to Stewart, the other two lines of credit were secured by appellee's investment accounts. Stewart testified there were enough separate assets to collateralize both lines of credit.

Appellee testified that he intended to trade his interest in the Alberta house for his interest in the Friendswood house. The deed to the Friendswood house and the policy title were in appellee's name, individually. However, the deed does not contain a separate property recital. *See Roberts v. Roberts*, 999 S.W.2d 424, 432 (Tex. App.—El Paso 1999, no pet.) (noting a recital in an instrument of conveyance is considered to be a "separate property recital" if it states that the consideration is paid from the separate funds of a spouse or that the property is conveyed to a spouse as his or her separate property).

The Alberta house sold in April 2014 for approximately $1,414,000. The proceeds were used to pay off the 2010 line of credit, which included the $25,000 for the earnest money. Appellee placed the remaining amount of approximately $422,000 in a community account. Appellee did not seek reimbursement for those separate funds; they were used to support the community.

Appellant first claims the trial court erred in failing to disregard the jury's answer to question five as to the Friendswood house because both parties argued for 100 percent and neither side argued for the finding the jury made. Stewart testified that all but $12,000 of the funds used to pay off the debt on the Friendswood house was separate property. Stewart further testified that the remaining balance owed on the house was approximately $270,000. The jury was instructed, without objection:

> The part that is separate property is the percentage of the purchase price paid with separate property or separate credit. To calculate a separate-property interest, divide the separate-property contribution by the total purchase price. The interest remaining after all separate-property interests have been deducted is community property.

The jury characterized seventy-eight percent of the house as appellee's separate property and twenty-two percent as community property. Twenty-two percent of 1,200,000 is $264,000, approximately the amount left owing on the house—that debt was assigned to appellee as his separate liability. Thus a reasonable fact finder could find there was clear and convincing evidence necessary to overcome the community property presumption and establish that seventy-eight percent of the Friendswood house was appellee's separate property.

Next, appellant contends the Friendswood house is 100 percent part of the community estate because it was purchased with funds borrowed during the marriage. *See* Tex. Fam. Code § 3.003(a). Appellant relies upon well-established law that "debts contracted during marriage are presumed to be on the credit of the

community and thus are joint community obligations, unless it is shown the creditor agreed to look solely to the separate estate of the contracting spouse for satisfaction." *See Cockerham*, 527 S.W.2d at 171. To determine whether a debt is only that of the contracting party, "it is necessary to examine the totality of the circumstances in which the debt arose." *Id*.

Taken as a whole, appellee's testimony reflects the funds to purchase the Friendswood house were needed before the funds from the sale of the Alberta house were available so he borrowed the money to secure the purchase of the house. Appellee testified that under the terms of those loans, they were secured by his separate property assets. Stewart also testified that the security for the loans was appellee's separate property. There was no evidence to the contrary. *See Bush v. Bush*, 336 S.W.3d 722, 743 (Tex. App.—Houston [1st Dist.] 2010, no pet.) (citing *Pace*, 160 S.W.3d at 714 (recognizing that testimony on characterization of property can be sufficient when it is not contradicted and is supported by other evidence or testimony)). Appellant has failed to demonstrate the trial court abused its discretion by failing to grant her motion to disregard the jury's answer to question number five with regard to the Friendswood House. We overrule issue twelve.

### 4. Reimbursement claims

Appellant's fourteenth issue claims the evidence was legally and factually insufficient to support the jury's answer to question seven as to the community estate's claim for reimbursement against appellee's separate estate. As noted above, appellee's amended property division included a claim for reimbursement that appellee owed to the community estate in the amount of $12,020, which the jury awarded in answer to question seven. Appellant's brief asserts she was entitled to additional reimbursement. In addition to the premiums for SunLife and the payments

26

to Pangaea, appellant states a claim for reimbursement for securities investment and pre-marital separate debt.

"A right of reimbursement arises when the funds or assets of one estate are used to benefit and enhance another estate without itself receiving some benefit." *Vallone v. Vallone*, 644 S.W.2d 455, 459 (Tex. 1982). The party claiming the right of reimbursement has the burden of pleading and proving that the expenditures and improvements were made and that they are reimbursable. *Id.* The measure of reimbursement is the enhancement value. *Zeptner v. Zeptner,* 111 S.W.3d 727, 735 (Tex. App.—Fort Worth 2003, no pet.) (citing *Penick v. Penick,* 783 S.W.2d 194, 197 (Tex. 1988)). "The trial court should not simply return to the spouse seeking reimbursement the actual amount advanced to the other spouse's separate estate." *Penick,* 783 S.W.2d at 197–98; *Zeptner,* 111 S.W.3d at 735.

Appellant's brief cites to testimony that a claim for reimbursement might exist and asks for the return of the actual amount spent. Appellant does not refer this court to any evidence in the record that the community estate received no benefit from the expenditure of the community funds or that the value of appellee's separate estate was enhanced. *See Vallone*, 644 S.W.2d at 459. Accordingly, appellant has failed to establish her right to reimbursement. Issue fourteen is overruled.

5. Partition

Issue thirteen argues the trial court erred in sustaining appellee's objection to appellant's attempted explanation of Texas law on partition or exchange of community property during opening argument. The Texas Family Code provides the exclusive means by which a spouse may transfer community property to the separate estate of the other spouse and that such an agreement must be in writing and signed by both parties. *See* Tex. Fam. Code §§ 4.102, 4.104.

During opening argument, appellee's counsel told the jury that appellee sold the home he owned in Canada for approximately 1.5 million and reinvested the money in the Friendswood house. Appellee's counsel informed the jury there was a dispute as to whether the house was separate property because it was purchased with funds that were separate property, or community property because it was purchased during the marriage. Appellee's counsel then stated, "But one thing is clear and that is the title to the property here was taken in [appellee's] sole name. [Appellant] -- they agreed to that. Although they may dispute that now, the evidence will show that they agreed to that; and that, in fact, his name is the sole name on the house here in Friendswood."[10]

Appellant's counsel, in opening argument, stated that appellee was claiming the Friendswood house, acquired during the marriage, as separate property. Appellant's counsel told the jury that the Friendswood house, acquired with borrowed money, would be a separate liability only if the lender agreed to look solely to the appellant's separate property for payment. Appellant's counsel further stated:

> The evidence will show that Mr. Mugford just said, "It's going to be my separate property and I'm going to put my name on the deed." The counsel spoke to an agreement. . . . The evidence will show that there's a way in Texas to partition property. Our State Constitution allows us to -- married couples can do anything they want to with their property if they do it according to the Family Code.

At this point, appellee's counsel made the objection that is the subject of this complaint. A discussion was held out of the jury's hearing. Appellee's counsel argued appellee had not claimed partition and it was not an issue in the case. The trial court agreed, saying, "I'm just trying to figure out why you're going to explain

---

[10] The fact that the deed is solely in appellee's name came into evidence before the jury.

28

an area of the law that doesn't apply to this case." The trial court noted that partition is a legal remedy and concluded that it was an option, but it was not exercised in this case. The trial court sustained the objection, stating, "I'm not going to go into partition agreements."

The Friendswood house was presumptively community property. *See* Tex. Fam. Code § 3.003(a). The record reflects appellee endeavored to use tracing to rebut the presumption. Accordingly, we cannot conclude the trial court abused its discretion in determining that partition did not apply to this case and sustaining the objection. Issue thirteen is overruled.

D. *Division of the Community Estate*

In her final and fifteenth issue, appellant claims the trial court abused its discretion in dividing the community estate. Appellant asserts the trial court's division of the marital estate was grossly disproportionate and that appellee was awarded "the majority" of the community estate.

In a decree of divorce, the trial court shall order a division of the parties' estate in a manner that the court deems just and right, having due regard for the rights of each party. Tex. Fam. Code § 7.001. A trial court may exercise wide discretion in ordering a property division. *Aduli*, 368 S.W.3d at 819 (citing *Bell v. Bell*, 513 S.W.2d 20, 22 (Tex. 1974)). It is presumed the trial court properly exercised its discretion in determining the value and division of marital property and the division need not be equal. *Id*. The trial court may consider factors such as the spouses' capabilities and abilities, business opportunities, education, relative physical conditions, relative financial conditions and obligations, disparity in age, size of separate estates, nature of the property, and disparity in income and earning capacity.

29

*Knight v. Knight*, 301 S.W.3d 723, 728 (Tex. App.—Houston [14th Dist.] 2009, no pet.).

Alleged error in the division of marital property is reviewed for an abuse of discretion. *Aduli*, 368 S.W.3d at 819 (citing *Bell*, 513 S.W.2d at 22). To disturb a trial court's division of property, a party must show that the court clearly abused its discretion by a division or an order that is manifestly unjust or unfair. *Stavinoha v. Stavinoha*, 126 S.W.3d 604, 607-08 (Tex. App.—Houston [14th Dist.] 2004, no pet.). "A trial court does not abuse its discretion if there is some evidence of a substantive and probative nature to support the decision." *Knight*, 301 S.W.3d at 728. A trial court abuses its discretion if it acted unreasonably or arbitrarily, or without reference to any guiding rules or principles. *Id*. Legal sufficiency and factual sufficiency are relevant factors, rather than independent bases for reversal, in determining whether the trial court abused its discretion in its property division. *Aduli*, 368 S.W.3d at 819; *Stavinoha*, 126 S.W.3d at 608.

We first note that appellant does not assert, nor attempt to show, that the mischaracterization of Account 1418 had more than a de minimis impact on a just and right division of the community estate. *See Palaez v. Juarez*, No. 04-14-00022-CV, 2014 WL 7183483, at *4 (Tex. App.–San Antonio Dec. 17, 2014, pet. denied) (mem. op.) (refusing to reverse husband's mischaracterization issue because husband did not attempt to show how mischaracterization caused trial court to err in overall division of community estate); *Pace*, 160 S.W.3d at 716 ("Pace makes no argument as to why the property division is unfair or unjust apart from the alleged mischaracterization. In short he has failed to conduct a harm analysis."). Given the record before us, appellant's claim that she was entitled to $24,821 of Account 1418 as community property is not, on its face, evidence of an unfair or unjust division.

Turning to appellant's complaint, in order to determine whether the assets of the community estate were divided in a just and right manner, we must have the trial court's findings on the value of those assets. *Vasudevan v. Vasudevan*, No. 14-14-00765-CV, 2015 WL 4774569, at *4 (Tex. App.—Houston [14th Dist.] Aug. 13, 2015, no pet.) (mem. op.) (citing *Wells v. Wells*, 251 S.W.3d 834, 840–41 (Tex. App.—Eastland 2008, no pet.)). Without such findings, we cannot know the basis for the division, the values assigned to the community assets, or the percentage of the marital estate that each party received. *Id.* In the absence of such findings, we presume the trial court made all the necessary findings to support its judgment. *Id.*

Here, neither the trial court's judgment nor its findings of fact and conclusions of law reflect the value the court assigned to each asset or liability. The trial court's findings of fact and conclusions of law do not reflect the net value of the community property. The respective inventories filed by appellant and appellee that assign values to the community property assets cannot serve as a substitute for findings of fact by the trial court. *Id.* Appellee does not concede that appellant actually received a larger share. *Id.* Consequently, it is impossible for this court to determine that the trial court abused its discretion in its division of the community property. *Id.* Accordingly, we overrule appellant's fifteenth and final issue.

## IV. CONCLUSION

Appellant has not established the trial court abused its discretion by allowing alternate beginning and ending possession times. Further, the record does not reflect the trial court abused its discretion in the overall division of the marital property. However, the trial court did abuse its discretion by failing to enter the jury's verdict on the geographic restriction in the final divorce decree. Accordingly, the final decree of divorce is modified to reflect appellant is permitted to establish the minor

31

child's primary residence within Calgary, Canada, and a fifty-mile outward radius. As modified, the final decree of divorce is affirmed.

                                /s/     John Donovan
                                            Justice

Panel consists of Justices Boyce, Donovan and Jewell.