**Affirmed and Memorandum Opinion filed August 27, 2019.**



In The

# Fourteenth Court of Appeals

### NO. 14-18-00397-CV

**DREYLIN L. JOHNSON, Appellant**

**V.**

**ALEJANDRA E. GARCIA, Appellee**

**On Appeal from the 280th District Court
Harris County, Texas
Trial Court Cause No. 2018-10251**

## M E M O R A N D U M   O P I N I O N

Dreylin Johnson appeals from the trial court's entry of a protective order in favor of Alejandra Garcia, the mother of Johnson's child. In a single issue, Johnson challenges the legal and factual sufficiency of the evidence to support the entry of the protective order and the award of attorney's fees for the State, which sought the protective order on behalf of Garcia. We affirm.

## *Background*

At the protective order hearing, Garcia testified that Johnson was the father of her child, they were in a relationship for two years or less, they had lived together at one point, and he had assaulted or threatened her in the past. The first such incident Garcia recounted occurred on November 24, 2017. Garcia said that after Johnson cancelled her cell phone service, she asked him why he had done so. He then started an argument and pushed her against the wall, causing her to hit her head. Garcia said that she pushed Johnson back because she was scared, but Johnson kept pushing her until she fell to the ground. When she tried to call 911, Johnson threw her phone against the wall, knocking a hole in the wall. Garcia said that this incident was not the first time Johnson had pushed her.

Garcia described another incident that occurred on December 21, 2017, a week after Johnson had "kicked" her out of the apartment. They had arranged for Garcia to come to the apartment with their daughter so that Johnson could see the child. Garcia said that she saw Johnson's new girlfriend at the apartment and took the child back from his arms. According to Garcia, Johnson then tried to fight her over their daughter. As Garcia was trying to leave, Johnson grabbed Garcia's wrist or arm and twisted it. Garcia was screaming for him to stop, but he would not, so she pulled her arm away. Exhibit 1 was admitted into evidence, and Garcia asserted that it showed a bruise on her arm caused by Johnson's thumb.

Garcia further testified that on February 3, 2018, they agreed Johnson could come to the house where Garcia and their daughter were living so that Johnson could see the girl. Garcia said that appellant sat down for a minute with the girl but then got up and said that he was taking her. Garcia told him "no," took the girl back from Johnson, and attempted to call the police. According to Garcia, Johnson hung up the phone and started punching her on her back, very hard, with a closed

fist. She again attempted to call the police, but Johnson took the phone from her. Garcia ran outside with the child, and Johnson followed her and began pulling Garcia's hair, "dragging" her toward his car. Garcia managed to get away and ran to a neighbor's house, where she pounded on the door with one arm while holding the child with the other. Garcia said that Johnson was pulling on the child's sweater.

When the neighbor opened the door, Garcia ran inside as Johnson fought with the neighbor for entry into the house. Johnson finally left the house, and the neighbor called the police. An emergency medical technician examined the child because the child had marks on her back from where Johnson had been pulling on her sweater. Garcia also stated that Johnson had injured her during the incident and offered Exhibit 2 to show bruising on her upper arm. Exhibit 3 was a magistrate's protective order that was entered against Johnson after the February incident. Lastly, State's counsel asked Garcia why she thought threats of violence would continue if a protective order was not granted, and Garcia replied, "He's been violent before, he'll be violent again."

Johnson testified regarding the December 2017 incident that Garcia had agreed to drop off their child at his apartment. He met Garcia in the parking lot, but according to Johnson, Garcia ran up to his apartment, went inside, and saw his girlfriend in the bedroom. Johnson said that Garcia then started pulling on their daughter and hitting him, then she pushed him down while he was holding the child and pushed his girlfriend. When Garcia again started pulling on the child, Johnson let go, and Garcia left with the child.

Although he was not specific about the date, Johnson acknowledged that there was an earlier incident when he and Garcia were living together and he cancelled her phone. According to Johnson, Garcia yelled at him and threw things

3

at him. He said that to stop her from assaulting him further, he pushed her back. She called the police, but the police did not arrest Johnson at that time.

As to the February 2018 incident, Johnson testified that he had gone to where Garcia was living to see their daughter. Garcia invited him inside the house, and he sat down for a few minutes with his daughter on his lap before telling Garcia that he wanted to take the girl to see his mother. He then started walking towards the door, and Garcia began pulling on the girl while saying that Johnson could not take her. According to Johnson, the child began screaming, so he hit Garcia on her back to make her stop hurting the girl, but Garcia kept pulling and he let the girl go. Garcia then ran to the neighbor's house with the girl. Johnson denied grabbing Garcia by the hair or dragging her towards his car, and he denied trying to force his way into the neighbor's house. He acknowledged, however, that when Garcia was entering the neighbor's house, he had his hand on their daughter's sweater. He further acknowledged that he was charged with assault and interfering with an emergency phone call based on the February incident.

Johnson additionally testified that he had never been violent with Garcia except to protect himself, he had never visited her workplace or residence uninvited, and he had never stalked her or followed her in a menacing way. He said that he has family that could help facilitate exchanges of their daughter so that he would not need to meet with Garcia himself.

Johnson's girlfriend testified about the December 2017 incident. She was in the bedroom of Johnson's apartment folding clothes when Johnson walked in followed by Garcia, who was yelling. According to the girlfriend, Garcia pushed and hit Johnson, and when the girlfriend tried to get the child safely away, Garcia pushed her as well. Garcia then pushed Johnson again, and he fell to the floor with the child. He then let go of the child, and Garcia left with the child. The girlfriend

4

said that Johnson suffered scratches on several parts of his body during the encounter but they did not take photographs of his injuries. Johnson's father also testified, saying that he did not observe anything that concerned him between Johnson and Garcia and that he could serve as an intermediary to facilitate exchanges of the child between Johnson and Garcia. The State also offered testimony in support of its request for attorney's fees and sought an award of $900 in attorney's fees.

At the conclusion of the hearing, the trial court indicated that it found that family violence had occurred and was likely to occur again if the court did not grant the protective order. In the order, the court echoed the same findings, provided detailed restrictions against Johnson, and awarded $900 in attorney's fees to the State.

### *Standards of Review*

In his sole issue, Johnson contends the evidence is legally and factually insufficient to support the trial court's issuance of a protective order and award of $900 in attorney's fees. When, as here, a trial court acts as a factfinder, we review its findings under the legal and factual sufficiency standards. *In re Doe*, 19 S.W.3d 249, 253 (Tex. 2000); *Caballero v. Caballero*, No. 14-16-00513-CV, 2017 WL 6374724, at *3 (Tex. App.—Houston [14th Dist.] Dec. 14, 2017, no pet.) (mem. op.).

In a legal sufficiency challenge, we view the evidence in the light most favorable to the judgment and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). We must credit favorable evidence if a reasonable factfinder could and disregard contrary evidence unless a reasonable factfinder could not. *Id*. at 807, 827. A legal sufficiency challenge to a family violence protective order may be sustained only

5

when (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact. *Caballero*, 2017 WL 6374724, at *3. More than a scintilla of evidence exists if the evidence furnishes some basis for reasonable minds to reach differing conclusions about a vital fact's existence. *See Lee Lewis Constr., Inc. v. Harrison*, 70 S.W.3d 778, 782–83 (Tex. 2001).

When reviewing the factual sufficiency of the evidence, we examine the entire record, considering evidence both in favor of and contrary to the challenged findings. *See Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). We will set aside a factual finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986). The trier of fact is the sole judge of the credibility of the witnesses and the weight to afford their testimony. *GTE Mobilnet of S. Tex. Ltd. v. Pascouet*, 61 S.W.3d 599, 615–16 (Tex. App.—Houston [14th Dist.] 2001, pet. denied). We will not substitute our judgment for that of the factfinder merely because we might reach a different conclusion. *Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 407 (Tex. 1998).

### *Protective Order*

The Family Code provides for issuance of a protective order if the trial court finds that family violence has occurred and is likely to occur in the future. Tex. Fam. Code §§ 81.001, 85.001(b). "Family violence" is defined, in pertinent part, as an

> act by a member of a family . . . against another member of the family . . . that is intended to result in physical harm, bodily injury, assault, or

6

sexual assault or that is a threat that reasonably places the member in fear of imminent physical harm, bodily injury, assault, or sexual assault, but does not include defensive measures to protect oneself.

*Id*. § 71.004(1). "Family" is defined to include "individuals who are the parents of the same child." Tex. Fam. Code § 71.003.

In his brief, Johnson acknowledges that "the evidence indicates that these parents engaged in acts that could be considered domestic violence." He further agrees that caselaw indicates that evidence of past violent conduct alone can constitute competent evidence that is legally and factually sufficient to sustain the award of a protective order. *See, e.g., Teel v. Shifflett*, 309 S.W.3d 597, 604 (Tex. App.—Houston [14th Dist.] 2010, pet. denied); *Banargent v. Brent*, No. 14–05–00574–CV, 2006 WL 462268, at *1–2 (Tex. App.—Houston [14th Dist.] Feb. 28, 2006, no pet.) (mem. op.). Johnson argues, however, that the evidence is insufficient in this case because (1) Garcia's testimony regarding the potential of future violence was conclusory, and (2) there was no evidence regarding how future violence might occur in light of the evidence that Johnson had never gone to Garcia's residence or workplace uninvited and exchanges of the child could be handled through intermediaries.

As for Garcia's allegedly conclusory testimony, Johnson highlights her statement that family violence was likely to occur in the future in the absence of a protective order because "[h]e's been violent before, he'll be violent again." The trial court, however, did not need someone to testify directly to the likelihood of future violence; that inference could be made by the trial court as factfinder from the evidence of past family violence occurring on three separate occasions. *See, e.g., Teel*, 309 S.W.3d at 604 ("The trial court reasonably could have concluded that future violence is likely to occur based on the testimony showing a pattern of violent behavior."); *Banargent*, 2006 WL 462268, at *1–2 ("While past violence

7

does not mandate a finding of likely future violence, it can support such a finding in some instances, such as here, where there were multiple instances of past violence . . . .").

The testimony that Johnson had intermediaries available to facilitate the exchange of his and Garcia's daughter for visitation can only be seen as a positive development. However, based on the evidence detailed above about repeat violent encounters, the trial court reasonably could have concluded that future family violence was still likely to occur unless a protective order was granted. There was no evidence that intermediaries always would be available or that Johnson always would use intermediaries. And, even if Johnson had so testified, the trial court—as sole judge of the credibility of witnesses—could have disregarded that testimony even though it was not directly controverted. *See GTE Mobilnet*, 61 S.W.3d at 615–16. Accordingly, the fact that Johnson testified regarding the existence of intermediaries and that he had not gone to Garcia's residence or place of employment uninvited did not render the evidence legally or factually insufficient. *See Teel*, 309 S.W.3d at 604; *Banargent*, 2006 WL 462268, at *1–2.

### *Attorney's Fees*

The only assertion that Johnson makes in regard to the award of attorney's fees is that "[w]ithout testimony as to actual attorney's fees incurred by the Harris County District Attorney's office any award of attorney's fees would be based on speculation." Johnson does not make any further statement and cites no relevant authority in support of this assertion. Accordingly, the issue is inadequately briefed. *See* Tex. R. App. P. 38.1(i); *Bruce v. Cauthen*, 515 S.W.3d 495, 513 (Tex. App.—Houston [14th Dist.] 2017, pet. denied). Johnson has thus waived the issue for appellate review.

Finding no basis for appellate relief in any of Johnson's appellate arguments, we overrule his sole issue.

We affirm the trial court's protective order.

/s/    Frances Bourliot
Justice

Panel consists of Chief Justice Frost and Justices Jewell and Bourliot.